IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**T.H.,**

    **Plaintiff,**

**v.**                                                                   **No.**

**FORMER SHERRIFF'S DEPUTY**
**MICHAEL ANDREW MARTINEZ, in his individual**
**capacity; COUNTY COMMISSIONERS OF THE BOARD**
**OF COMMISSIONERS OF DOÑA ANA COUNTY:**
**CHRISTOPHER SCHALJO-HERNANDEZ, DIANA**
**MURILLO, SHANNON REYNOLDS, SUSANA CHAPARRO,**
**MANUEL A. SANCHEZ, in their official capacities; and**
**COUNTY MANAGER FERNANDO MACIAS,**
**in his official capacity, comprise, DEFENDANT COUNTY,**

    **Defendants.**

### PLAINTIFF'S COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS AND VIOLATIONS OF THE NEW MEXICO TORT CLAIMS ACT AND NEW MEXICO CIVIL RIGHTS ACT

    COMES NOW, Plaintiff, by and through her attorneys of record, The Kennedy Law Firm, P.C. (Joseph P. Kennedy and Shannon L. Kennedy), the Law Offices of Israel Chávez (Israel Chávez), and Markowski Ruvalcaba Law Firm, LLC (T.R. Markowski), and brings this Complaint to recover damages. In support of this Complaint, Plaintiff states as follows:

### PRELIMINARY STATEMENT

"Professionalism ⭐ Integrity ⭐ Fairness"

    Those words, adorned with yellow badge-stars, are inscribed on the door of every Doña Ana County Sherriff's Office ("DASO") unit. These three words should guide the behavior of every DASO deputy afforded the responsibility to serve their community. These three words were

inscribed on the door of the DASO patrol car, the very unit in which Defendant Former Sheriff's Deputy Michael Andrew Martinez sexually abused Plaintiff.

The inscription bears no resemblance to the sexual assaults Plaintiff experienced at the hands of Michael Andrew Martinez, a deputy who DASO welcomed despite a plethora of red flags, who then betrayed his office, his badge, his Sheriff, and fellow deputies when he falsely claimed someone had broken into his police unit and tampered with the camera therein. Before he abused Plaintiff, Deputy Martinez had unplugged his body worn camera and placed his hand over the lens so he could speak with Plaintiff in the hospital in a lewd and sexually suggestive manner, asking her to unzip her jacket to gratify his sexual impulses.

After Deputy Martinez transported Plaintiff to jail, after he falsely accused another of tampering with his patrol unit camera, he then used his position of authority as a deputy to locate T.H.'s place of employment, to discover her cell phone number and to call her to promise the criminal charges against her would be dismissed. All she had to do was show up to court. Plaintiff was terrified he would come to her home. Plaintiff was terrified to be alone.

DASO failed to adequately psychologically screen Deputy Martinez, a lateral transfer from Hatch Police Department and former New Mexico State Police ("NMSP") officer, who claimed he left NMSP because he had an affair and needed to be closer to his family. In January of 2020, a NMSP report shows charges against him for interfering with his wife's ability to use her cell phone in Las Cruces, New Mexico. Despite these red flags, DASO empowered Deputy Martinez with a badge and gun and let him loose upon the community, where he targeted a vulnerable young woman, for his own sexual gratification. This community deserves better. This community deserves to be safe from policing agencies' betrayals and abuses of power.

Plaintiff sues herein not only to hold responsible the man who sexually abused and who terrified her, but to hold responsible those who put him in a position of power as well. As Deputy Martinez was emboldened by a lack of supervision to break the laws he had sworn to uphold, the County has the power to change to adequately screen out anti-social hires, supervise and enforce policies related to body worn and in-car cameras and in doing so to make sure this never happens again.

## JURISDICTION, PARTIES, AND VENUE

1. Plaintiff brings this Complaint under 42 U.S.C. Section 1983 for damages resulting from the Deprivation of Civil Rights inflicted upon her by Defendant Michael Andrew Martinez ("MAM").

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331. Personal jurisdiction is proper since all parties reside or are or were at all material times employed in the District of New Mexico. Additionally, MAM's actions giving rise to Plaintiff's claims took place within the District of New Mexico.

3. Defendant Board of County Commissioners of Doña Ana County ("Defendant County") is a body corporate, established pursuant to the laws of the State of New Mexico, which operates the Doña Ana County Sheriff's Office and is authorized to sue and be sued in its capacity as a governmental county.

4. At the time of the events giving rise to the lawsuit, Defendant Fernando Macias was County Manager of Doña Ana County. He resides in Doña Ana County, New Mexico.

5. At all times Defendant Macias acted within the course and scope of his appointment and contract with Defendant County.

6. Defendant Fernando Macias as County Manager was a policymaker and direct supervisor of all Doña Ana Sheriff's deputies and was indifferent to the safety of the citizens of Doña Ana County when he hired and retained Defendant Martinez, a person psychologically unfit to be a deputy.

7. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b) as Defendant's actions causing injury to the Plaintiff took place within the District of New Mexico.

8. All the events alleged in this Complaint occurred in Doña Ana County, New Mexico.

9. Immunity has been waived pursuant to NMSA 1978, Section 41-4-6 of the New Mexico Tort Claims Act for the tort claims against Defendant County. Defendant County received timely notice of tort claims under the New Mexico Tort Claims Act pursuant to NMSA 1978, Section 41-4-16 (2007).

10. Defendant County is vicariously liable for the acts and omissions of individual deputies and policymakers and are jointly and severally liable for the actions of Defendant Michael Andrew Martinez ("MAM").

11. Under the New Mexico Civil Rights Act, Defendant County does not enjoy the defense of qualified immunity for causing the deprivation of any rights, privileges or immunities secured by the bill of rights of the constitution of New Mexico. NMSA 1978, Section 41-4A-4.

12. Under the New Mexico Civil Rights Act, Defendant County receives public funding and thus is a public entity subject to a claim for violations of rights established pursuant to the Bill of Rights of the Constitution of New Mexico. NMSA 1978, Sections 41-4A-2 and 41-4A-3.

13. Under the New Mexico Civil Rights Act, Defendant County does not have immunity for itself or persons acting on behalf of it to include Defendant MAM and the County Manager.

14. Plaintiff T.H., is an individual and resides in New Mexico. [1]

15. Defendant MAM was always a sheriff's deputy and was an employee of the Doña Ana County Sheriff's Office ("DASO") at all relevant times at issue in this Complaint.

16. Defendant MAM was acting under the color of state law at all relevant times at issue in this Complaint.

17. Defendants Christopher Schaljo-Hernandez, Diana Murillo, Shannon Reynolds, Susana Chaparro, and Manuel A. Sanchez are sued only in their official capacities and constitute the Board of County Commissioners of Doña Ana County at all material times.

## FACTUAL BACKGROUND

## DASO POLICY MAKERS

18. Kim Stewart was at all material times and is currently the Sheriff of Doña Ana County. Stewart has previously testified that all hiring and firing authority lies with the Defendant County Manager Fernando Macias.

19. Defendant County Manager Fernando Macias failed to institute hiring and firing policies to protect the citizens of Doña Ana County from abusive deputies, to include Defendant Martinez.

20. Defendant County Manager Fernando Macias failed to institute policies to prevent deputies from intentionally failing to record contact with citizens on their body worn cameras to cover up the unlawful actions of deputies.

21. Stewart is allowed to propose policies, but it is the Doña County Board of Commissioners that adopts policy and the Doña Ana County Manager who enforces policy.

---

[1] Plaintiff is filing this Complaint under her initials rather than her full name due to the nature of the Complaint and the fact that she is a victim of criminal sexual contact, and criminal charges are currently pending against Defendant Martinez (USA v. Michael Andrew Martinez, Case 2:24-cr-00512-MIS) in the United States District Court for the District of New Mexico. Thus far, Plaintiff's identity has been kept confidential from the public. The public would not benefit from disclosure of T.H.'s legal name. Defendant is aware of T.H.'s identity and is not prejudiced by T.H. proceeding as Plaintiff identified only by her initials.

22. Defendant County Manager Fernando Macias failed to enforce policies violated by deputies, creating a culture of corruption with DASO wherein Defendant Martinez thought he would get away with sexually assaulting a vulnerable young woman in his custody by unplugging the audio and covering the camera of his body worn camera and by attempting to destroy the police unit's camera's footage of his sexual assaults and batteries of Plaintiff in the backseat of his patrol unit.

23. DASO policy makers need to amend DASO policies to mandate supervisors keep a log when they watch two BWC recordings a month of the deputies they supervise.

24. DASO policy makers need to require rigorous pre-hiring background checks of all candidates (to include lateral hires), investigations into charges against candidates of a domestic violence ilk or nature, and psychological screening interviews and tests to ensure those hired to protect and serve have the mental aptitude and health to do so.

**PRE-ASSAULT EVIDENCE MAM WAS UNFIT TO SERVE AS A LAW ENFORCEMENT OFFICER IGNORED BY DASO AND COUNTY MANAGER**

25. On January 7, 2020, MAM was charged with Interreference with Communications, a full misdemeanor contrary to NMSA 30-12-1.

26. He was alleged to have been involved in an altercation with his spouse.

27. It is alleged MAM took her phone from her, preventing her from calling 911. When she reached her friend's house, she called 911.

28. Shortly, after he was charged, he resigned from the New Mexico State Police and later was hired by the Hatch Police Department.

29. During the federal sentencing, MAM testified that he left NMSP "because he had an affair," and needed to be closer to his family.

30. Defendant County failed to investigate whether MAM had engaged in domestic violence in January 2020 during a pre-hiring investigation before hiring him to work for DASO.

31. Defendant County failed to adequately psychologically screen MAM before hiring him and thereby failed to determine whether he was mentally fit to be a deputy before and during his employment with DASO.

## MAM'S SEXUAL ASSAULTS & BATTERIES OF PLAINTIFF

32. On April 30, 2023, around 3:00 a.m., while on duty as a DASO sheriff's deputy, MAM was required to comply with the Constitution and the laws of New Mexico and the United States of America.

33. On April 30, 2023, around 3:00 a.m., while on duty as a DASO sheriff's deputy, MAM responded to a call out for a car accident involving Plaintiff.

34. On April 30, 2023, MAM placed Plaintiff, a 20-year-old female, under arrest for suspicion of careless driving and driving under the influence of alcohol.

35. MAM placed Plaintiff in the back seat of his DASO vehicle.

36. MAM transported Plaintiff in his DASO vehicle to the Mountain View Regional Medical Center ("MVRMC") in Las Cruces, New Mexico, for medical care and clearance.

37. While Plaintiff was in a MVRMC hospital room, MAM asked Plaintiff to unzip her jacket.

38. MAM placed Plaintiff in handcuffs behind her back and pulled her against his pelvis, forcing her to feel his erection.

39. Following Plaintiff's release from MVRMC, MAM walked Plaintiff in handcuffs back to his DASO vehicle and placed her in the backseat of the DASO patrol car.

40. Once in his DASO patrol car, MAM fastened the seatbelt across Plaintiff's chest.

41. MAM touched Plaintiff's body without her consent.

42. MAM touched Plaintiff's unclothed upper thigh.

43. MAM moved his hand between Plaintiff's legs.

44. MAM spread Plaintiff's legs apart.

45. MAM rubbed Plaintiff's genitals.

46. MAM moved the seatbelt positioned across Plaintiff's chest.

47. MAM groped Plaintiff's left breast over her hoodie sweatshirt.

48. When MAM move his right hand inside Plaintiff's hoodie and grabbed her breast, he caused her pain.

49. Plaintiff did not consent to any of MAM's sexual assaults of her body.

50. MAM's conduct resulted in bodily injury to Plaintiff.

51. MAM touched Plaintiff's intimate parts for his own sexual gratification.

52. MAM acted willfully.

53. When Plaintiff experienced pain while MAM grabbed her breast, she told him he was hurting her.

54. When MAM arrived at the DASO station, he removed Plaintiff from the prisoner compartment and again pulled her against his pelvis, forcing her to feel his erection.

55. On April 23, 2024, MAM plead guilty to a violation of 18 U.S.C. § 242, 250(b0(4)(A) Deprivation of Rights under Color of Law for his abuse sexual contact with T.H., while acting under the color of state law.

56. On April 23, 2024, MAM admitted under penalty of perjury that he formerly worked as a DASO sheriff's deputy when he deprived T.H. of her right to bodily integrity.

57. On April 23, 2024, MAM admitted under penalty of perjury that knowing the harm caused by sexual abuse, he nonetheless engaged in criminal sexual contact with T.H.'s breasts and genitals.

58. On April 23, 2024, MAM admitted under penalty of perjury that when he touched T.H.,'s body without consent, he knew it was against the law.

59. On April 23, 2024, MAM admitted under penalty of perjury that when he touched T.H.,'s body without consent that T.H. did not want him to do it, but he did it anyway.

60. On April 23, 2024, MAM admitted under penalty of perjury that when he touched T.H.,'s genitals, he knew it was against the law and that T.H. did not want him to do it, but he did it anyway.

61. On April 23, 2024, MAM admitted under penalty of perjury that when he touched T.H.,'s breasts, he knew it was against the law and that T.H. did not want him to do it, but he did it anyway.

62. On April 23, 2024, MAM admitted under penalty of perjury that his actions were a willful violation of T.H.'s constitutional rights, and more specifically, a violation of her right to be free from violations of her bodily integrity of the type prohibited by subsection (a)(1) and (b) of Title 18, United States Code, Section 2244.

63. On September 4, 2024, MAM was sentenced to nine years in federal prison for his violations of T.H.'s constitutional right to bodily integrity.

64. MAM is court ordered to register as a federal sexual offender for his violations of T.H.'s bodily integrity.

**DESTRUCTION & ATTEMPTED DESTRUCTION OF AUDIO & VIDEO EVIDENCE**

65. On the evening of April 30, 2023, MAM disabled the audio capabilities of his body-worn camera and covered its lens before and while asking Plaintiff to unzip her jacket in the hospital to expose her breasts for his sexual gratification.

66. MAM fully disabled his body-worn camera while at the hospital with T.H.

67. On the evening of April 30, 2024, after transporting T.H. to the Doña Ana County Detention Center, MAM intentionally attempted to destroy his DASO patrol car's WatchGuard DVR System, which is the patrol car's internal video camera system that, among other things, records and stores footage from the patrol unit's backseat and dashboard cameras.

68. MAM attempted to destroy the WatchGuard DVR System to cover up any recording of his violations of Plaintiff's bodily integrity in the backseat of his patrol vehicle.

69. MAM engaged in this misconduct to impede and obstruct any criminal investigation into his sexual misconduct committed under the color of law.

70. On April 23, 2024, MAM admitted under penalty of perjury that he knowingly violated 18 U.S.C. § 1519, Destruction, Alternation, or Falsification of Records in a Federal Investigation when he attempted to destroy his patrol car's internal video camera system.

### COUNT I – FOURTEENTH AMENDMENT: SUBSTANTIVE DUE PROCESS & EQUAL PROTECTION VIOLATIONS AGAINST DEFENDANT MAM

71. Plaintiff incorporates the preceding paragraphs by reference herein.

72. Plaintiff's constitutional rights include her right to bodily integrity to prevent persons in governmental positions of power from sexually assaulting and abusing her intimate parts while she is in state custody.

73. The constitutional protection against cruel and unusual punishment for use of force against pretrial detainees applies through the due process clause of the Fourteenth Amendment.

74. Plaintiff was a pretrial detainee at the time of the incident; thus, her Fourteenth Amendment rights to bodily integrity and equal protection were violated by MAM when he used his position as a sheriff's deputy to effectively "punish" Plaintiff by sexually assaulting her.

75. Plaintiff enjoyed the right to be secure in her bodily integrity and free from sexual attack by DASO personnel under both the Eighth and Fourteenth Amendments.

76. Plaintiff enjoyed the right to equal protection of the law under the Fourteenth Amendment.

77. MAM's male pretrial detainees while in his custody in his DASO patrol vehicle were similarly situated to Plaintiff.

78. MAM sexually harassed and sexually abused Plaintiff, a female pretrial detainee, and a member of a protected class: female.

79. MAM did not, however, sexually harass and sexually abuse male pretrial detainees, as he did Plaintiff.

80. MAM sexually harassed and sexually abused Plaintiff because she is female, for his own sexual gratification.

81. In doing so, MAM violated Plaintiff's Fourteenth Amendment right to equal protection of the law.

82. MAM's acts were intentional, malicious, sadistic, willful, wanton, obdurate, and, in gross and reckless disregard of T.H.'s constitutional rights.

83. MAM sexually battered Plaintiff, based on her gender, female, for his own sexual gratification, in violation of her right to bodily integrity, and is liable in violation of 42 U.S.C. § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.

84. MAM's conduct under the color of law grossly and maliciously deprived T.H. of her right to bodily integrity.

85. MAM's actions proximately caused physical injuries, including post-traumatic stress syndrome (PTSD) to Plaintiff.

86. MAM acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of her substantive due process and equal protection constitutional rights to equality and bodily integrity.

87. The actions of Defendant MAM were willful, wanton and in reckless disregard of Plaintiff's rights, thereby justifying an award of punitive damages to deter each of him and others like him from engaging in such harmful and offensive conduct in the future.

### COUNT II – VIOLATION OF NEW MEXICO CIVIL RIGHTS ACT AGAINST DEFENDANT COUNTY

88. Plaintiff restates all the preceding allegations as if fully set forth herein.

89. Defendant County is a public body within the meaning of the New Mexico Civil Rights Act, Section 41-4A-3.

90. At all times material, the individual Defendants were acting on behalf of, under color of, or within the course and scope of Defendant County, and Defendant County is liable for their actions pursuant to NMSA Section 41-4A-3(C), to include Defendant MAM.

91. Article II, Sections 13, 18 and 24 of the New Mexico Constitution are analogous to the due process and equal protection clauses of the Fourteen Amendment of the United States Constitution and prohibit violations of equal protection and bodily integrity of pretrial detainees by deputies, like MAM, who perform the government function of transporting pretrial detainees in need of medical care to hospitals and jails.

92. Article II, Section 18 of the New Mexico Constitution also guarantees that "[e]quality of rights under law shall not be denied on account of sex of any person." This guarantee became part of our state constitution in 1973, after the people of New Mexico passed the Equal Rights Amendment by an overwhelming margin.

93. There is no counterpart to New Mexico's Equal Rights Amendment in the United States Constitution now enforceable pursuant to the New Mexico Civil Rights Act.

94. The New Mexico's Equal Rights Amendment is a specific prohibition that provides a legal remedy for the invidious consequences of gender-based discrimination that prevailed under the common law and protects the bodily integrity of pretrial detainees like T.H. from sexual assaults by her captors, like MAM, during in-custody transportation, pursuant to the New Mexico Civil Rights Act.

95. On April 23, 2024, MAM admitted that he knowingly, willfully, and intentionally committed, while acting under the color of law, a deprivation of T.H.'s fundamental right to bodily integrity, a right secured and protected by the Constitution and the laws of the United States, when he touched T.H.'s genitals and breasts without her consent and without a legitimate law enforcement purpose.

96. MAM's conduct resulted in bodily injury to T.H.

97. Defendant County's negligent acts and failures to act proximately caused T.H.'s damages and violation of her state and federal constitutional rights and his civil rights pursuant to the New Mexico Civil Rights Act.

98. Plaintiff has suffered physical injuries, serious harm and losses as a direct result of the deprivation of her state constitutional rights and these deprivations of rights are the proximate cause of the serious harm, physical injury and losses to Plaintiff.

### COUNT III: TORT CLAIMS: SEXUAL ASSAULTS & BATTERIES AGAINST DEFENDANT COUNTY & DEFENDANT MAM

99. Plaintiff restates all the preceding allegations as if fully set forth herein.

100. Plaintiff did not consent to any offensive and invasive behaviors described above and perpetrated on her by Defendant MAM.

101. Plaintiff was in constant fear of continued or even worse sexual batteries perpetrated on her by MAM before and after she was in his physical custody.

102. Defendant MAM actions constituted multiple assaults and batteries on Plaintiff.

103. Defendant MAM abused his power to restrain her to perpetuate his ability to sexually abuse her while she was in his custody.

104. When MAM seat belted into place and handcuffed Plaintiff against her will she feared he would sexually assault her.

105. MAM touched Plaintiff in a rude and offensive manner on her genital and breasts causing Plaintiff pain and bodily injury.

106. As a result of the offensive conduct, Plaintiffs suffered pain, humiliation, degradation and Post Traumatic Stress Disorder (PTSD).

### COUNT IV: NEGLIGENT SUPERVISION, TRAINING, AND RATIFICATION LEADING TO SEXUAL ASSAULTS AND BATTERIES AGAINST DEFENDANT COUNTY

107. All previous paragraphs are incorporated herein.

108. On September 20, 2020, Defendant County adopted Policy Number 100-034 to provide guidance of the use of in-car cameras (ICC) and to provide DASO personnel with instructions on when and how to use body-worn cameras (BWC).

109. In-car cameras (ICC) are electronic devices installed in DASO marked vehicles that record both audio and video data with 360 coverage around each marked vehicle.

110. Body-worn cameras are electronic devices worn on a deputy's body that record both audio and video data.

111. DASO policy mandates that deputies will not tamper with, alter, or manipulate any BWC recordings. This includes intentionally positioning or obscuring the BWC so that the law enforcement encounter is not captured on the camera.

112. It is the policy of DASO for the BWC and ICC to be activated when responding to a call for service, or at the initiation of any other law enforcement or investigative encounter with a citizen.

113. DASO policy mandates a deputy shall announce to the BWC that the camera's operation is ending due to scene security, guard duty, traffic control, etc., prior to turning off the BWC.

114. DASO policy mandates that all recordings on a BWC be properly identified by date, time, BWC identifier and assigned personnel (deputy) upon completion of the recording event.

115. DASO policy mandates that a deputy must properly categorize the video prior to downloading it to the server.

116. BWC and ICC shall be downloaded at the end of each duty period.

117. DASO policy mandates deputies will explain to their supervisors, in writing, their reasons for failing to activate their BWC, failing to record the entire contact, or interrupting required recordings.

118. DASO policy mandates that supervisors review at least two recordings per month from each assigned deputy.

119. DASO policy does not require supervisors of deputies (e.g. Sergeants) to log whether they have indeed watched two recordings per month of their deputies. Hence, Lieutenants have no

way to know whether Sergeants are indeed following written policies mandating they watch two recordings per month of their assigned deputies.

120. Because of the systemic deficiencies in oversight of recordings, MAM was emboldened to sexually assault and sexually battery Plaintiff by unplugging and obscuring his BWC, attempting to damage his ICC to prevent recording his sexual assault of Plaintiff in the back of his patrol unit, then made a false claim someone broke into his patrol unit to damage the ICC, and then follow up with T.H. at her work, called her private cell phone to promise the criminal charges filed against her would be dismissed.

121. MAM was either so sexually impulsive he did not care that he was likely to get caught for his sexual assaults of Plaintiff by DASO, or based in his experience working with DASO truly believed, due to a pattern of lack of supervision by his chain of command, that he would get away with not only sexually assaulting Plaintiff in the back seat of his patrol unit, but also able to dismiss the criminal charges against her without review or investigation by his chain of command.

122. Defendant County was negligent in the hiring, training, retention, and supervision of MAM who was clearly psychologically unfit to be a deputy.

123. The County's failure to adequately investigate MAM's charge for interference with his wife's cell phone while she tried to reach 911 during a domestic incident, prior to hiring him was negligent and fell below the standard of care of police departments tasked with hiring mentally healthy police officers.

124. Defendant County has failed to require DASO to implement an objective and rigorous internal accountability system for deputies' use of BWC and ICC.

125. Defendant County's lack of internal oversight and supervision has allowed a culture of aggression, dishonesty and lawlessness to fester within DASO promoting an acceptance of the unlawful welding of the police powers unchecked by the rule of law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of six.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

I. Actual and compensatory damages sufficient to make Plaintiff whole.

II. Punitive damages against MAM in an amount sufficient to punish him and to deter further wrongdoing.

III. Attorneys' fees, litigation expenses, costs, pre- and post-judgment interest as provided by law; and

IV. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**THE KENNEDY LAW FIRM, P.C.**

*/s/ Shannon L. Kennedy*
Shannon L. Kennedy
Joseph P. Kennedy
P.O. Box 26776
Albuquerque, NM 87125-6776
P: 505-244-1400 / F: 505-244-1400
jpk@civilrightslaw.com
slk@civilrightslaw.com

And

**Law Offices of Israel Chávez**
Israel S. Chávez
P.O. Box 16028

Las Cruces, NM 88004
Telephone: 575-312-6006
attorney@ichavezlaw.com

And

**Markowski Ruvalcaba Law Firm, LLC**
T.R. Markowski
125 W Griggs Ave
Las Cruces, NM 88001
P: 575-523-9052 or 575-343-2337
tr@lawfirmmr.com