**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

T.H.,

      Plaintiff,

v.                                                   No. 2:24-cv-00887-MIS-KRS

FORMER SHERIFF'S DEPUTY MICHAEL
ANDREW MARTINEZ, *in his individual capacity*,

      Defendant,

and

BOARD OF COMMISSIONERS OF DOÑA ANA COUNTY,

      Defendant-In-Intervention.

## OPINION AND ORDER GRANTING MOTION FOR CONFIDENTIALITY ORDER

THIS MATTER is currently before the Court on two pending motions: (1) Opposed Motion For Entry of Confidentiality Order ("Motion for Confidentiality Order" or "Motion"), filed by Plaintiff T.H. (Doc. 87); and (2) Motion to Strike Plaintiff's Reply Brief in Support of Motion for Entry of Confidentiality Order ("Motion to Strike"), filed by Intervenor-Defendant Board of Commissioners of Doña Ana County ("the County") (Doc. 116). After carefully considering the arguments presented in the briefing on the two motions, the record of the case, and relevant case law, the Court **DENIES** the Motion to Strike and **GRANTS** the Motion for Confidentiality Order. Plaintiff's Proposed Confidentiality Order (Doc. 87-1), with certain modifications as discussed below, will be entered by separate order.

## I.    BACKGROUND and PROCEDURAL HISTORY

This case involves an incident that occurred in the early morning hours of April 30, 2023, when Doña Ana County sheriff's deputy Michael Martinez responded to a call out for a car accident. (Doc. 82 ¶ 16). Upon arriving at the scene, Martinez placed Plaintiff, a twenty-year old female, under arrest for suspicion of careless driving and driving under the influence of alcohol,

and then transported her to a medical center in Las Cruces, New Mexico for medical care. (*Id.* ¶ 19). While at the hospital, Martinez allegedly unplugged his body-worn camera and placed his hand over the lens so he could speak to Plaintiff in a lewd and sexually suggestive manner. Plaintiff's hands were handcuffed behind her back, and Martinez allegedly pulled her body to him so that she was pressed against his pelvis. (*Id.* ¶¶ 20-21). After Plaintiff was released from the hospital, Martinez walked Plaintiff, still in handcuffs, back to his patrol car. He placed her in the back seat of the car and fastened the seatbelt across her chest. Plaintiff alleges that Martinez sexually assaulted her in the back seat of the patrol car, and then committed further sexual assaults against her after they had arrived at the sheriff's office. (*Id.* ¶¶ 21-31, 37). Later that day, Martinez allegedly destroyed the WatchGuard DVR System that would have recorded his actions, telling the sheriff's office that someone had attempted to break into his unit. (*Id.* ¶ 39-44). The sheriff's office initiated an investigation into the suspicious circumstances surrounding the missing body-worn camera. (*Id.* ¶ 47). On May 11, 2023, the sheriff's office obtained footage from Martinez's camera from WatchGuard, which showed Martinez's sexual assaults of Plaintiff. (*Id.* ¶ 48). Upon reviewing the footage, the sheriff's office terminated Martinez as a sheriff's deputy. (*Id.* ¶ 50). On September 19, 2023, federal criminal charges were brought against Martinez for civil rights violations against Plaintiff's bodily integrity. (*Id.* ¶ 52). On April 23, 2024, Martinez pled guilty to those charges and was sentenced to nine years in federal prison. (*Id.* ¶¶ 54, 62).

Plaintiff filed this lawsuit on September 5, 2024, alleging federal claims for deprivation of her civil rights and various state law claims for sexual assault and battery. The original complaint named Martinez, the County, and several individuals employed by the County as defendants. (Doc. 1). Plaintiff filed a First Amended Complaint on October 7, 2024 (Doc. 20), and a Second Amended Complaint on October 25, 2024 (Doc. 27), both of which named only Martinez and the

County as defendants. Plaintiff then filed a notice of voluntary dismissal of the County (Doc. 30), which prompted the County to seek to re-join the lawsuit by filing a motion to intervene. (Doc. 56). The presiding trial judge granted the County's motion to intervene on February 27, 2025 (Doc. 63). Plaintiff filed the currently operative Third Amended Complaint on April 11, 2025 (Doc. 82). The County filed an answer on April 23, 2025, and Martinez filed an answer on April 25, 2025.

In March 2025, just before Plaintiff filed the Third Amended Complaint, an early attempt was made to settle the case, which proved unsuccessful. A Rule 16 scheduling order was first entered in the case on April 29, 2025. (Doc. 93). Around this same time, Plaintiff filed the present Motion for Confidentiality Order. Although the Motion indicates in the title that it is opposed, there is no "recitation of a good-faith request for concurrence" in the Motion itself, as required by D.N.M. LR-CIV. 7.1(a). Nor is there any certification in the Motion that Plaintiff had "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action," as required by FED. R. CIV. P. 26(c)(1).[1] Indeed, the Motion is strikingly brief, particularly given the acknowledgment in the title that it was opposed. In full, the Motion states as follows:

>     1.    The parties have been unable to agree to the terms of the proposed Confidentiality Order (Exhibit A); and
>
>     2.    Entry of a Confidentiality Order is necessary in this action to protect privacy interests of T.H., a victim of sexual assault, to protect confidential information from the person who abused her, the privacy interests of Defendant Martinez to his own treatment records, and to limit disclosure and use of such information and documents to this civil proceeding.

(Doc. 87 at 1).

---

[1] Neither the County nor Defendant Martinez has objected to the Motion for failing to comply with the conferral requirements of either D.N.M. LR-CIV. 7.1(a) or FED. R. CIV. P. 26(c)(1). Accordingly, the Court declines to deny the Motion on either of those bases.

Neither the Motion nor the attached proposed order gave any indication of which provisions in Plaintiff's Proposed Confidentiality Order (Doc. 87-1) were disputed or why. The Court was not informed of what those disputes were until the County and Martinez filed their responses to the Motion on May 5 and 6, 2025. The responses do not argue against entry of a confidentiality order, but rather only object to specific provisions in Plaintiff's Proposed Confidentiality Order. The County also attached its own proposed confidentiality order to its response. Because the County has not filed a motion requesting entry of the "Proposed Stipulated Confidentiality Order" attached to its response brief (Doc. 100-1), the Court will not consider it. The Court will address only Plaintiff's Proposed Confidentiality Order and the County's and Martinez's objections thereto in this opinion.

## II.    DISCUSSION

### A.    Motion To Strike

As an initial matter, the Court must address the County's motion to strike Plaintiff's reply brief. The County moves to strike Plaintiff's reply in support of her Motion for Confidentiality Order as untimely. The County filed its response to the Motion for Confidentiality Order on May 5, 2025. Pursuant to D.N.M. LR-CIV. 7.4(a), Plaintiff's reply was due by May 19, 2025. Plaintiff's reply was not filed until July 10, 2025, 52 days after the filing deadline. Plaintiff states in her response to the Motion to Strike that her failure to file a timely reply was due to excusable neglect. Specifically, "[P]laintiff's counsel had inadvertently thought the Reply had been previously filed and was surprised to learn when working on discovery answers that it had not been filed. When she discovered conclusively on the morning of July 9, 2025 that it had not been filed she communicated to opposing counsel the inadvertent mistake and worked swiftly to file the Reply." (Doc. 125 at 1-2).

"The failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing of the motion is complete." D.N.M. LR-CIV. 7.1(b). However, this rule is intended to facilitate the Court's management of its docket, allowing the Court to rule on a motion without waiting for an untimely reply. Here, the Court had not yet taken up the Motion for ruling when Plaintiff filed her untimely reply. Therefore, D.N.M.LR-CIV. 7.1(b) is not a bar to the Court's consideration of Plaintiff's late-filed reply. Nevertheless, the County argues that Plaintiff's reason for not filing her reply within the time allotted by D.N.M. LR-CIV. 7.4(a) does not satisfy the "excusable neglect" standard of FED. R. CIV. P. 6(b)(1)(B). According to the County, Plaintiff admits that her failure to file a timely reply was due to "inadvertence," and the Tenth Circuit supposedly held in *Quigley v. Rosenthal*, 427 F.3d 1232 (10th Cir. 2005), that inadvertence does not constitute excusable neglect.

Even if, as the County argues, Tenth Circuit law precluded the Court from finding excusable neglect under the present circumstances, the issue here is whether to consider a reply brief filed outside the time set forth in the Local Rules. And the Local Rules themselves provide that "[t]hese rules may be waived by a Judge to avoid injustice." D.N.M. LR-CIV. 1.7; *see, e.g., Moya v. 3316 22nd Ave SE. Rio Rancho, N.M., Sandoval Cnty.,* No. CV 18-0104 JB/JHR, 2018 WL 2447801, at *1 n.1 (D.N.M. May 31, 2018) ("These documents were not filed within the time period prescribed by this Court's Local Rules for a response to a motion. *See* D.N.M.LR-CIV. 7.4. However, the Court has the discretion to waive the Local Rules 'to avoid injustice.'" (quoting D.N.M. LR-CIV. 1.7)), *report and recommendation adopted sub nom. Moya v. Wells Fargo Bank, N.A.,* 328 F. Supp. 3d 1232 (D.N.M. 2018).[2]

---

[2] *See also Osterhoudt v. Marmon Motor Co.*, 986 F.2d 1428 (10th Cir. 1993) ("Local rules … are primarily housekeeping rules whose purpose is to facilitate the operation of the courts. Courts, therefore, have discretion in applying local rules." (internal citation omitted); *Meade v. Grubbs*, 841 F.2d 1512, 1519–20 (10th Cir. 1988) ("Although Rule 14(A) states that '[a]ny motion ... which is not opposed within fifteen (15) days ... shall be deemed

In this case, the Court concludes that the interests of justice are furthered by allowing the late filing. First, the lateness of the reply causes no harm to any party. The County argues that it has been harmed because, even though the Local Rules require that HIPAA releases be served with Initial Disclosures, Plaintiff has refused to provide the County with HIPAA releases until a Confidentiality Order is entered in the case. The County maintains that without Plaintiff's medical records, it has been unable "to determine the nature and extent of the Plaintiff's alleged injuries." (Doc. 116 at 2).[3] In the first place, the Local Rules' requirement of serving HIPAA releases with Initial Disclosures was not intended to override confidentiality concerns, and thus should not preclude Plaintiff from seeking a confidentiality order prior to serving those releases. Moreover, as previously noted, the Court could have ruled on the Motion for Confidentiality Order without waiting on the untimely reply. *See* D.N.M. LR-Civ. 7.1(b). In other words, the harm asserted by the County is not the result of Plaintiff's late filed reply but of the Court not having taken up the Motion for ruling sooner. In any event, the County's asserted harm of delay in obtaining discovery from Plaintiff could have been easily avoided if the County had simply worked with Plaintiff to reach an agreement concerning the terms of the confidentiality order. In most cases, that is what

---

confessed,' we nonetheless read the Rule as affording discretion to the trial court." (internal citation omitted)); *Cortez v. Wal-Mart Stores, Inc.*, No. CV 03-1251 BB/LFG, 2006 WL 8444428, at *2 (D.N.M. Mar. 24, 2006) ("the District Court's local rules specifically provide that their requirements 'may be waived by a Judge to avoid injustice' and Tenth Circuit authority confers the trial court with discretion to excuse compliance with local rule deadlines" (internal citation omitted), *aff'd*, 460 F.3d 1268 (10th Cir. 2006).

[3] According to Plaintiff, defense counsel already has all the medical evaluations and mental health treatment history of Plaintiff needed to assess her injuries as the result of two settlement conferences that were held. *See* (Doc. 125 at 4). The County denies this assertion, pointing to more recent medical records that Plaintiff has not yet turned over to the County. The County further responds that Plaintiff has violated Fed. R. Evid. 408 by including an "explicit discussion of settlement evaluations and negotiations in this matter." (Doc. 132 at 6). "Rule 408 only bars admission of evidence relating to settlement discussions if that evidence is offered to prove 'liability for or invalidity of the claim or its amount.'" *Broadcort Cap. Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (quoting Rule 408). Even if Plaintiff's discussion in her response brief of her past settlement offer(s) arguably does not fall within Rule 408's proscription, "when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers." *Bradbury v. Phillips Petroleum Co*., 815 F.2d 1356, 1364 (10th Cir. 1987). For these reasons, the Court will not consider Plaintiff's argument that the County already has sufficient medical records to assess her injuries.

happens, and a stipulated confidentiality order is presented to the Court for immediate entry. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427–28 (10th Cir. 1990) (acknowledging that stipulated "blanket" protective orders have become "standard practice" in complex cases (citing MANUAL FOR COMPLEX LITIGATION, SECOND, § 21.431 (1985)), and approving their use because "they allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, 'to secure the just, speedy, and inexpensive determination of every action'" (quoting FED. R. CIV. P. 1)).

　　　As the Court's discussion in the next section of this opinion will show, the majority of the County's objections to Plaintiff's Proposed Confidentiality Order could have been resolved through negotiations between the parties, particularly as to the confidentiality of Plaintiff's medical records. A stipulated order could have been submitted dealing with the confidentiality of those and other undisputed matters, reserving the genuinely disputed issues regarding the video footage and the sharing of documents with Martinez for court determination. The only explanation the Court can think of for why this did not occur is that counsel for both sides are failing to confer in good faith as they should be doing. In fact, the Court could deny the Motion without prejudice and direct the parties to attempt to reach an agreement on the provisions in Plaintiff's Proposed Confidentiality Order that are disputed yet easily resolvable. But discovery appears to have gotten off track in this case, and one of the ways for the Court to put the case back on track to a speedy resolution is to rule on the Motion as it has been presented. In the future, however, Plaintiff should be careful to comply with the conferral requirements of both D.N.M. LR-CIV. 7.1(a) and FED. R. CIV. P. 26(c), as well as to provide an adequate explanation of the issues in any disputed motion

she files, rather than waiting until the reply brief to provide that explanation. In the end, however, the Court finds there is no prejudice from the delay caused by a confidentiality order not having been entered in the case sooner. It has been only five months since discovery opened, and no trial has yet been set. Further, the Court recently granted the parties' stipulated motion to extend case management deadlines.

Second, counsel's delay, while substantial, is adequately explained by her mistake in believing the reply brief had already been filed, and nothing in the record contradicts Plaintiff's statements that her counsel missed the filing deadline because of this mistaken belief. The County argues that "Plaintiff's failure to file a timely reply and notice of completion of briefing was designed to delay these proceedings and prevent the parties from obtaining a complete set of [] Plaintiff's medical records." (Doc. 132 at 2). The County points to the fact that Plaintiff's counsel failed to seek an extension of the filing deadline as support for its suggestion of bad faith. But the County misses the point. If Plaintiff's counsel believed the reply had been filed, as she claims, then obviously it would not have occurred to her to ask for an extension of time to file the reply.[4] The Court finds there is no reason in this case to question Plaintiff's counsel good faith with regard to the late reply brief filing. *See Ahanchian v. Xenon Pictures, Inc.,* 624 F.3d 1253, 1262 (9th Cir. 2010) (finding there was no indication that the plaintiff's failure to file the opposition on time was the result "a bad-faith, post-hoc rationalization concocted to secure additional time"; among other

---

[4] The County appears to have drawn its argument from the court's opinion in *Palzer v. CoxCom, LLC*, 833 F. App'x 192 (10th Cir. 2020), which cited the plaintiff's failure to seek an additional extension as an indication of bad faith. *Id.* at 198. But the facts in *Palzer* are starkly different from those here. In *Palzer*, the plaintiff "moved to extend the expired response deadline based on the press of business. The district court granted the motion but warned counsel that '[n]o further extensions shall be granted.' Ignoring the no-further-extension order, [the plaintiff] moved for another press-of-business extension to respond to the motion to strike. The district court denied the motion. Nevertheless, [the plaintiff] filed an unauthorized response three days after the extended deadline, which the district court struck." *Id.* at 197. Given the previous extensions that were sought and granted, the court found that the plaintiff's "counsel flaunted the rules and the court's deadlines and did not establish excusable neglect for filing the response almost three weeks after the twice-extended deadline without seeking leave to do so." *Id.* at 199. Here, there is no basis in the record for saying that Plaintiff's counsel "flaunted the rules and the court's deadlines."

things, "counsel had no history of missing deadlines or disobeying the district court's orders," and "in fact … demonstrated a sensitivity to the court's orders and deadlines by promptly seeking extensions of time where necessary").

Third, the Court finds that Plaintiff's delay did not impact judicial proceedings, as the Court was prevented by its own docket from taking up the motion any earlier. Even though 52 days "is far from a de minimis violation" of Local Rule 7.4(a), "[t]he untimely filing of a brief is not jurisdictional … and [the Court] ha[s] discretion to excuse a late filing." *Burnham v. Humphrey Hospitality Reit Trust, Inc.,* 403 F.3d 709, 712 (10th Cir. 2005) (excusing late filing by more than 30 days of appellate brief).

Finally, and perhaps most importantly, not allowing the reply would be detrimental to these proceedings, as the reply provides additional information and argument that is helpful for the Court in making an informed ruling on the Motion for Confidentiality Order. *See, e.g., Castillo v. Rosario,* No. 22-CV-0054-CVE-CDL, 2024 WL 102658, at *1 (N.D. Okla. Jan. 9, 2024) (excusing compliance with local rule prohibiting filing of multiple or successive motions for summary judgment because it was "in the best interest of each of the parties and th[e] Court's resolution of legal issues to permit … [a] second motion for partial summary judgment").[5] As one court explained, while the Local Rules "play an integral role in ensuring fair and equitable treatment of all parties," they should be employed "in a manner to promote the administration of justice. … Contrary to this goal, [the] [p]laintiff's counsel seeks to gain a tactical advantage due to the understandable oversight by [the] [d]efendants' counsel. Such actions do not promote justice, in

---

[5] *See also Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,* 791 F. Supp. 2d 1014, 1022 (D.N.M. 2011) (waiving local rule deadline for filing bill of costs because it would be an injustice not to award the plaintiff the costs of producing the transcript, of which the Court and parties made great use, and doing so does not undermine the policy underlying [the local rule]").

that they do not permit each party to present their respective cases to the best of their abilities." *Newton v. City of Muskogee*, No. CIV-06-532-C, 2007 WL 9808287, at *1–2 (E.D. Okla. Sept. 28, 2007); *see also In re Lavenhar,* No. 12-27817 MER, 2013 WL 4220689, at *3 n.6 (Bankr. D. Colo. Aug. 7, 2013) (excusing procedural deficiencies in the Summary Judgment Motion because they have not prejudiced the parties or hindered the Court's understanding of the issues, and because "denying the Summary Judgment Motion on procedural grounds would conflict with the Tenth Circuit's preference for determination of matters on their merits" (citing Tenth Circuit case law)).

For all of the above reasons,[6] the Court finds that the interests of justice support waiving the Local Rule deadline for filing of reply briefs so that the Court can reach a fully informed decision on the pending Motion for Confidentiality Order.

---

[6] Even if the Court were required to apply FED. R. CIV. P. 6(b)(1)(B) and the excusable neglect standard in deciding whether to allow the late filed reply, the Court disagrees with the County that inadvertence can never be considered excusable neglect. "Whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. Such circumstances include [1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388 (1993)). The issues of prejudice, the length of the delay, and Plaintiff's good or bad faith are addressed above. "'The most important factor" for the excusable neglect standard, however, is the reason for the delay, and "'an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect.'" *Palzer,* 833 F. App'x at 197 (quoting *Perez v. El Tequila, LLC,* 847 F.3d 1247, 1253 (10th Cir. 2017)). "[T]he movant should allege the facts constituting excusable neglect and the mere assertion of excusable neglect unsupported by facts has been held to be insufficient." 4B FED. PRAC. & PROC. CIV. § 1165 (4th ed.) (citing *Quigley*). This does not mean that facts which amount to inadvertence can never be sufficient for a court to find excusable neglect. Indeed, as the Tenth Circuit explained in *United States v. Torres*, 372 F.3d 1159 (10th Cir. 2004), "the [Supreme] Court *rejected* the notion that excusable neglect exists only when a delay in filing is the result of circumstances beyond a party's control, stating that 'by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, ... Congress plainly contemplated that the courts *would be permitted*, where appropriate, to accept late filings *caused by inadvertence*, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Id.* at 1162 (quoting *Pioneer Inv. Servs. Co.,* 507 U.S. at 388 (emphasis added))). At bottom "what constitutes excusable neglect depends on the circumstances presented to the court," but generally speaking "require[s] a demonstration of good faith on the part of the party seeking an extension of time and some reasonable basis for noncompliance within the time specified in the rules." 4B FED. PRAC. & PROC. CIV. § 1165. While a mistake about whether the brief had already been filed "may be a weak justification for an attorney's delay, 'courts have previously found [similar] mistake[s] to be excusable neglect." *Ahanchian,* 624 F.3d at 1262; *see* 4B FED. PRAC. & PROC. CIV. § 1165 ("The rule's requirements are quite flexible, and the district judge enjoys broad discretion to grant or deny an extension.").

### B.    Motion For Confidentiality Order

### 1.    Legal Standard

"[P]arties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order." *Okla. Hosp. Ass'n v. Okla. Pub. Co.,* 748 F.2d 1421, 1424 (10th Cir. 1984); *see also Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir. 1994) ("Absent a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit."). Thus, "[a] party that wants to secure limits on the downstream use of discovery information must take affirmative steps to achieve that result." *Williams v. City of Burlington*, No. 3:19-cv-00043-SMR-HCA, 2020 WL 11027939, at *2 (S.D. Iowa, June 17, 2020) (internal citation and modification omitted). Typically, a party does this by obtaining a "blanket" protective order, which places limits on the otherwise free use of discovered information. *Id.*[7]

A court's issuance of a blanket protective order is governed by Federal Rule of Civil Procedure 26(c)(1). Rule 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). Rule 26(c)(1)'s good-cause standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). The decision to issue a protective order rests within the sound discretion of the trial court. *See Duncan v. City of Topeka, Kansas*, No. 24-2336-DDC-ADM, 2024 WL 5106677, at *2 (D. Kan. Dec. 13, 2024) (citing *Wang v. Hsu,* 919 F.2d 130 (10th Cir. 1990), and *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Generally, however, "[t]he party seeking a protective order has the burden to show good cause for it." *Layne Christensen Co. v.*

---

[7] In this case, the parties use the term "confidentiality order" to mean a blanket protective order.

*Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010). The required good cause showing is somewhat different than the good cause showing needed to obtain a protective order that would prevent discovery of certain information altogether. In the context of a blanket protective order, the party seeking protection must show good cause to believe discovery will involve confidential or protected information, a showing that may be made "on a generalized basis, as opposed to a document-by-document basis." *Norman v. Town & Country Heating & Air Conditioning Co.*, No. 2:24-CV-02537-KHV-TJJ, 2025 WL 974261, at *2, *4 (D. Kan. Apr. 1, 2025). "[G]eneralized injuries that are patent from the nature of the documents" are often offered by the parties and accepted by the court as a basis for a finding of good cause. *Id.* While blanket protective orders are frequently entered by agreement of all parties to the litigation, "agreement to enter a blanket protective order between the parties is not required." *Id.* (internal quotation marks and citation omitted).

### 2.    The County's Objections[8]

**Sections 1(c) and 1(f):**

The County's first objection to Plaintiff's Proposed Confidentiality Order relates to Sections 1(c) and 1(f). Section 1 describes the categories of information that may be designated as "Confidential," and, once so designated, are to "be kept confidential and … utilized by the Parties for purposes solely related to the Lawsuit." Subsection (c) covers "materials contained in employment or personnel files relating to the Parties or to any other employee, defined for purposes of this Order to include current or former employees and volunteers of" the County, while Subsection (f) includes "video footage between Plaintiff T.H., and Defendant Michael Andrew Martinez."

---

[8] Defendant Martinez joins in the County's objections. *See* (Doc. 101).

The County argues these provisions would prevent the County from complying with its legal obligations under the Inspection of Public Records Act, NMSA 14-2-1, *et seq*. But the County does not elaborate any further, and it is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Seifert v. Unified Gov't of Wyandotte Cnty./Kan. City*, 779 F.3d 1141, 1156 (10th Cir. 2015) (internal quotation marks and citation omitted). In her reply, Plaintiff states that the provisions in question do "not restrict the County from responding to public records requests; however, the County when responding to any such request should respect the Plaintiff's privacy and blur her face to protect her identity, to prevent her from being re-victimized and to protect women and girls as a policy from the gender-violence of strangers watching their sexual assaults for their own prurient interests." (Doc. 110 at 4).

To the extent that Section 1(c) covers Plaintiff's employment or personnel files, the County's objection is overruled. Plaintiff is not an employee or former employee of the County and therefore the Public Records Act has no application to her employment records. The only other documents that potentially could be produced in discovery falling under Section 1(c) are employment or personnel records of Defendant Martinez. Defendant Martinez joins in the County's objections, apparently unconcerned with maintaining confidentiality over his own personnel records. Since Plaintiff has no interest in maintaining confidentiality over Martinez's employment records either, the Court will modify the language of Section 1(c) to make clear that the County may disclose outside this lawsuit any documents falling under this category if such disclosure is required by a request made pursuant to the Public Records Act.

Although it is not clear from the County's arguments, its objection relating to the Public Records Act appears to be most pertinent insofar as Section 1(f) is concerned. Through Section

1(f), Plaintiff seeks to prevent public disclosure of the body camera footage showing Defendant Martinez's assault on Plaintiff. Blanket protective orders typically are sought by the producing party to place limitations on the receiving party's use of the producing party's confidential information. *See* FED. R. CIV. P. 26(c)(1) ("A party or any person *from whom discovery is sought* may move for a protective order ….") (emphasis added); *Adolph Coors Co. v. Am. Ins. Co.*, 164 F.R.D. 507, 514 (D. Colo. 1993) ("[A] protective order is intended to operate as *the producing party's shield* against the receiving party's misuse of protected information." (emphasis added)). But here, Plaintiff, the receiving party insofar as the video footage is concerned, is seeking to impose a disclosure restriction on the County, the producing party of the video footage. Unlike the usual case, however, Plaintiff has a privacy interest in the video footage, notwithstanding that it is the County that has custody and control over the video footage. Because Plaintiff has a privacy interest in the video footage, the Court finds that Plaintiff has shown good cause for limited protection from public disclosure of the video. *See* FED. R. CIV. P. 26(c) ("…. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]").

That finding, however, does not resolve the Public Records Act issue raised by the County. Plaintiff states in her reply that she is willing to modify the Proposed Confidentiality Order to provide that the County is not restricted by responding to public records requests, so long as the County, when responding to any such request, blurs Plaintiff's face to protect her identity. The Court finds this suggestion to be a reasonable response to the County's objection. But the offered compromise was made in Plaintiff's reply, so the County has not had the opportunity to respond to it.

Moreover, neither side has provided the Court with pertinent legal authority to explain how a request by a non-party for the video footage would be treated under the Public Records Act. The issue should have been clarified through good faith negotiations had they occurred prior to filing the Motion, allowing a more focused motion to be presented to the Court. Nevertheless, out of expediency the Court has done its own research, and it appears that there are certain exceptions to the right of public access under the Public Records Act, one of which pertains to "portions of law enforcement records as provided in Section 14-2-1.2 NMSA 1978." N.M. Stat. Ann. § 14-2-1(d). Section 14-2-1.2 provides in relevant part that:

> Law enforcement records are public records, except as provided by law and this subsection, and provided that *the presence of nonpublic information may be* redacted from a written record or *digitally obscured in a visual or audio record,* including:
>
> (1)     before charges are filed, names, addresses, contact information or protected personal identifier information of individuals who are victims of or non-law-enforcement witnesses to an alleged crime of:
>
> (a)     assault with intent to commit a violent felony pursuant to Section 30-3-3 NMSA 1978 when the violent felony is criminal sexual penetration; .....

N.M. Stat. Ann. § 14-2-1.2 (emphasis added). The problem is that this provision only protects Plaintiff's identity from public disclosure through digitally obscuring her face in the video in the time period "before charges are filed." Since charges have been filed against Defendant Martinez, and indeed he has already been convicted, it would seem that the Public Records Act might require full disclosure of the video without alteration. The Court also notes case law wherein "courts tend to exclude [police officer bodycam] footage from protective orders based on the public's strong interest in transparency of public incidents." *Duncan v. City of Topeka, Kan.*, No. 24-2336-DDC-

ADM, 2024 WL 5106677, at *3 (D. Kan. Dec. 13, 2024) (citing case law) (denying motion by the defendant city for protective order that would prevent the plaintiffs from releasing to the public police cam videos produced by the city defendant).

It is true that in *Duncan*, the court permitted the city defendant "to designate limited portions of footage containing any person's contact information or birthdate and/or information *or images of minors* as confidential." *Id.* (emphasis added). The identity of minors, however, is protected by Federal Rule of Civil Procedure 5.2. And while Plaintiff has filed this lawsuit under a pseudonym, she has not filed a motion seeking court permission to proceed under an alias. Therefore, there has been no finding by the Court that she is entitled to protect her identity from public disclosure. *See, e.g., Williams v. New Mexico State Univ.,* 348 F.R.D. 694, 697 (D.N.M. 2025) ("the starting point for an analysis of whether to grant a request to litigate by pseudonym is [t]he normal presumption in litigation [ ] that parties must use their real names" (internal quotation marks and citations omitted)). On the other hand, the County and Defendant Martinez have not contested the fact that Plaintiff filed this suit anonymously, and, at least in that sense, appear to have waived the issue. If the issue of anonymity is not contested, then it makes sense that the confidentiality order would continue to protect that anonymity. *See, e.g., Doe P.B. v. Wyndham Hotels & Resorts, Inc.,* 750 F. Supp. 3d 484, 488 (D.N.J. 2024) (where it was not disputed that the plaintiff could proceed pseudonymously, court approves provisions in confidentiality order designed to maintain that confidentiality).

In the end, the Court finds there are unresolved issues concerning the bodycam footage that prevents the Court from ruling definitively on whether the Court has the authority to order the County to blur Plaintiff's image from the footage if called upon to produce the video in response to a Public Records Request. Since the County has not argued that a Public Records request for

the video footage has actually been made, the Court will enter a confidentiality order without altering the language in Section 1(f) of Plaintiff's Proposed Confidentiality Order. However, the Court will add a provision to the confidentiality order making clear that the confidentiality order is subject to modification upon a showing of good cause. If the County is asked to disclose the video footage pursuant to a request under the Public Records Act, it may file a motion to modify the confidentiality order to allow the County to comply with the law, providing sufficient legal analysis to show that the law requires the production of the video footage without alteration (i.e., without blurring Plaintiff's face) if that is the County's position. Plaintiff can then respond to the motion with citation to contrary authority,[9] and the Court will resolve the issue at that time.

**Sections 3, 5, and 6:**

The County's second objection is that Sections 3, 5, and 6 of Plaintiff's Proposed Confidentiality Order fail to list the County's insurance adjusters and their supervisors and boards. (Doc. 100 at 1). In her reply brief, Plaintiff states that she does not oppose including those parties in the sections in question, providing they abide by the Confidentiality Order. Accordingly, the Court will amend Plaintiff's Proposed Confidentiality Order to include the County's insurance adjusters and their supervisors and boards in the specified sections, provided those third parties agree to abide by the terms of the confidentiality order.

---

[9] At present, Plaintiff only provides the Court with rhetorical arguments and platitudes, without citing any legal authority that would govern the issue. *See* (Doc. 110 at 4 ("The least the County could do, when faced with a public records request for said video, is blur Plaintiff's face and protect her identity. Public entities do this all the time to protect the identification of undercover officers or officers involved in shootings. Public entities redact the identification of sexual assault survivors from police reports all the time. Plaintiff is unaware of any public records requests that would be implicated by her Confidentiality Order, but would hope the County would protect her as any other victim of sexual assault.")).

**Section 8:**

The County' third objection is to Section 8 of Plaintiff's Proposed Confidentiality Order requiring that the County file "documents labeled Confidential" under seal. The County argues that this provision "places an undue burden and expense on the County," and that "the process described in this section is cumbersome and confusing." (Doc. 100 at 2).

To begin with, Plaintiff's Proposed Confidentiality Order contains language (Section 7) making it clear that designating a document as confidential does not automatically entitle a party to filing a document containing the confidential information under seal. Rather, it requires the filing party to seek leave to file the document under seal. Whether leave will be granted by the Court will depend on whether the motion to file under seal demonstrates that the requirements for filing under seal in this district have been satisfied.[10] Beyond that, the County does not explain how requiring it to seek leave to file confidential documents under seal constitutes an undue burden or expense on the County. Such a provision is routinely found in blanket protection orders. In fact, the language of Section 8 appears to be taken directly from proposed protective order guidelines found on the individual judge's webpage of several of the judges in this District.[11] Accordingly, the County's objection is overruled.

**Sections 9 and 10**:

The County's last two objections are that Sections 9 and 10 of Plaintiff's Proposed Confidentiality Order are unnecessary. Plaintiff has not responded to the County's objection by

---

[10] *See Duncan*, 2024 WL 5106677, at *2 ("[T]he legal standards for sealing information in court filings (i.e., filings that are subject to the public's presumed right of access because they are considered in judicial decision making) are significantly stricter than for permitting a party to assert a confidential designation over information exchanged in discovery.").

[11] *See, e.g., Guidelines for Proposed Protective Orders* under **Procedures** tab for Judge Rozzoni, Judge Fashing. Judge Khalsa, Judge Martinez, and Judge Robbenhaar.

explaining the purpose of these two sections, which leaves the Court in the position of having to guess. In any event, the County objects to the provisions in question as "unnecessary" but points to no harm that would come from including them in the confidentiality order, leading the Court to wonder why the County's objections were necessary. The Court is also left to wonder whether the County had any discussion with Plaintiff over the necessity of the provisions in question prior to filing written objections asserting the somewhat trivial objection that the provisions are "unnecessary." In any event, the County's arguments do not persuade.

Section 9 relates to the use of confidential documents in court proceedings. The County argues it is unnecessary because "all parties must designate exhibits sufficiently in advance of trial," and "required motions can be filed after this designation." (Doc. 100 at 2). It is not entirely clear to the Court what the County's objection is. The purpose of Section 9 appears to go beyond merely requiring that exhibits be designated in advance of trial. It contains fairly standard language in blanket protective orders, the purpose of which is usually to clarify the procedure for seeking to offer confidential documents into evidence at trial. The County's objection is overruled.

Section 10 relates to the use and handling of documents containing protected health information. The County argues it is unnecessary because "[a]ny party producing medical or mental health records will be required to sign an appropriate HIPAA compliant release and will thus be aware that their records are being disclosed." (Doc. 100 at 2). The County's irrelevance objection only goes to the protected health information of parties, while Section 10 begins by addressing protected health information of non-parties who presumably may not have signed a release form. Section 10 permits the producing party to redact non-parties' private health care information if found in any produced documents. Beyond that, Section 10 contains language making clear that the confidentiality order qualifies as a court order within the meaning of 45

C.F.R. § 164.512(e), related to a covered entity's disclosure of protected health information "for judicial and administrative proceedings." While the Court is not an expert on HIPAA, and Plaintiff has not provided any explanation for this provision, the purpose of this additional language appears to be to facilitate the production of a party's protected health information by a covered entity such as a doctor's office or hospital. While that is also the purpose of a party being required to sign a HIPAA release form, the additional language in Section 10 is likely intended to provide assurances to any covered entities requested to produce a parties' protected health information, in the event that any questions are raised concerning the validity of a party's signed release, that their disclosure is nonetheless permitted by a court order.

**The County's ending statement regarding Plaintiff's mental health treatment records:**

The County ends its response brief with a statement: "Prior to the filing of this Motion, the Plaintiff voluntarily disclosed her mental health treatment records and a psychological evaluation. Some of these records were disseminated to individuals that are not subject to Plaintiff's proposed Confidentiality Order." (Doc. 100 at 2). If this comment is intended as an objection, it has no clear reference. Presumably, it refers to the designation of Plaintiff's medical and psychological records as "confidential" in Section 1(a) of Plaintiff's Proposed Confidentiality Order. The unexpressed objection appears to be that Plaintiff waived her right to designate such health records confidential by having disclosed them outside this lawsuit.

The County waived the objection by not clearly raising the issue. *See Seifert,* 779 F.3d at 1156. In any event, typically, the ability to designate documents as confidential when those documents are within the categories of documents for which protection is accorded may be lost only by those documents being made *publicly* available. *See, e.g., Anne A. v. United HealthCare Ins. Co.,* No. 2:20-CV-00814, 2023 WL 197301, at *4 (D. Utah Jan. 17, 2023) (if documents are

publicly available, they cannot be designated confidential in discovery during litigation). Plaintiff's private medical and mental health records are not publicly available, and therefore are presumptively "confidential," even if Plaintiff disclosed those records to select non-parties who may not be subject to the confidentiality order.[12] To the extent that the County can make a legal argument for why those health records cannot be considered "confidential," they may challenge Plaintiff's "confidential" designation pursuant to the procedures set forth in the confidentiality order. *See* Plaintiff's Proposed Confidentiality Order, Section 12 (setting forth the procedure to be followed "[i]f any Party disputes the designation of any document as Confidential Information").

### 3.    Defendant Martinez's Additional Objection

In addition to joining the County's objections, Defendant Martinez objects to Section 4 of Plaintiff's Proposed Confidentiality Order, arguing that it limits his ability to communicate with his defense counsel. (Doc. 101 at 1). Section 4 states as follows:

> Notwithstanding the terms of ¶ 3 above, counsel for Defendants may only show Confidential Material received from Plaintiff T.H. to Defendant Michael Andrew Martinez during face-to-face meetings between Defendant and his counsel and Defendants may not retain copies of any such Confidential Material received from Plaintiff T.H. Any such materials shown to, or reviewed with, Defendants will be collected by Defendants' counsel before concluding any meeting between them and no copies will be left with Defendant

---

[12] As it turns out, at least according to Plaintiff's reply, the County is referencing disclosure to select non-parties not subject to the confidentiality order *not* by Plaintiff, as the Court assumed, but by the County and/or Defendant Martinez. As Plaintiff explains, the County is referring to the Plaintiff having provided the County with some of her mental health records as part of the settlement conference held in the case. Plaintiff states that she provided those records to defense attorneys believing that they were protected under Rule 408 of the Federal Rules of Evidence, and that defense counsel would maintain confidentiality over those records even though there was no confidentiality order in place at the time. Plaintiff argues that "[t]he callousness of Defendant County writing, 'Some of those records were disseminated to individuals that are not subject to Plaintiff's proposed Confidentiality Order' is exactly why Plaintiff needs a Confidentiality Order now. Plaintiff requests the Court order Defendant's counsel to disclose those 'individuals,' so they can become subject to the purview of the Confidentiality Order and shred those records at the conclusion of this litigation pursuant to it." (Doc. 110 at 3). The Court will direct the parties to meet and confer over this dispute. Counsel for the County and Defendant Martinez shall provide Plaintiff with the names of all individuals outside of this litigation to whom they disseminated Plaintiff's mental health records or any other document provided by Plaintiff to them in confidence as part of settlement negotiations. The parties shall then seek to reach agreement regarding appropriate measures to take to maintain confidentiality over the documents in question.

> Michael Andrew Martinez. For purposes of this order, "face-to-face meetings" include any meetings between Defendants and their counsel conducted remotely using video (e.g., Zoom, Google Meet, etc.).

(Doc. 87-1 ¶ 4). As written, this Section is somewhat confusing in that it refers to Defendant Martinez but also to the plural "Defendant**s**." However, Plaintiff makes clear in her reply that the intent of this provision is to prevent *Defendant Martinez* from retaining in his possession any Confidential Materials produced in the case. Moreover, Plaintiff makes clear that the Confidential Materials she has in mind are her medical and mental health records. Presumably, she also intends to include the videocam footage. Thus, the Court will modify the language of Section 4 to provide the necessary clarifications, including the video footage within the category of confidential materials covered by the section in addition to any confidential materials produced by Plaintiff.[13]

According to Martinez, Section 4 "impermissibly seeks to limit the manner in which defense counsel may communicate with Defendant Martinez." (Doc. 101 at 1). Section 4 appears to be merely a variation of an "attorneys-eyes only" restriction, which, although not necessarily "common," are found often enough in blanket protective orders entered in certain types of litigation.[14] Section 4 is not as restrictive as an "attorneys-eyes only" provision because it allows Defendant Martinez to view documents or other discovery material marked "confidential." The only restriction is that Defendant Martinez is not permitted to *retain possession of* any of those documents or discovery materials. In order to allow defense counsel to share confidential materials with Martinez while also implementing the restriction against Martinez maintaining possession of

---

[13] Martinez may retain possession of his own confidential files and documents.

[14] *See, e.g., S2 Automation LLC v. Micron Tech., Inc.*, 283 F.R.D. 671, 685 (D.N.M. 2012) ("Permitting attorneys' eyes only restrictions as a general matter, … in light of the intellectual property concerns Micron Technology faces, is appropriate. Again, this is not an uncommon feature in protective orders in modern complex commercial litigation.").

those materials, defense counsel must not provide Martinez with paper copies of said materials by mail, email, or facsimile, because then it would not be possible for counsel to "collect" the materials from Martinez at the conclusion of the meeting. Accordingly, Section 4 provides that defense counsel may only share confidential materials with Martinez in a manner in which those materials may be collected by defense counsel before concluding any meeting between them and no copies are left with Martinez, i.e., via "face-to-face meetings" including any meetings between Defendants and their counsel conducted remotely using video (e.g., Zoom, Google Meet, etc.). For that reason, Martinez argues that Section 4 attempts to "dictate[e] the manner in which counsel communicates with his/her client." But as discussed, that is not a fair reading of the provision.

The Court rejects Martinez's mere assertion, unsupported by facts or legal authority, that Section 4 impermissibly interferes with the attorney-client relationship. *See, e.g., Aging Backwards, LLC v. Esmonde-White*, No. 16-20758-CIV, 2016 WL 11523402, at *1 (S.D. Fla. Sept. 26, 2016) (rejecting the plaintiff's argument "that an 'Attorneys' Eyes Only' provision impairs the attorney client relationship, impinges upon an attorney's ethical duties and constitutes an unnecessary level of secrecy," noting that "courts in this district frequently enter protective orders concerning confidentiality of materials obtained in discovery," which "orders are usually agreed to and … often contain an 'Attorneys' Eyes Only' type of heightened, or second-tier, confidentiality"). Rule 26(c)(1) broadly permits the Court, upon a showing of good cause, "to issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Such a protective order may, inter alia, "forbid[ ] the disclosure or discovery," "specify[ ] terms ... for the disclosure or discovery," or "limit[ ] the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(A), (B), (D). District courts have "broad discretion ... to decide when a protective order is appropriate and what degree of

protection is required." *Seattle Times Co.*, 467 U.S. at 36. "The party seeking a protective order has the burden of showing that good cause exists for issuance of that order. Accordingly, when a party seeks a limitation in a protective order designating certain documents as 'attorneys' eyes only,' it is that party's burden to establish good cause for the AEO designation." *Austin v. Fordham Univ.*, No. 23 CIV. 4696 (PAC) (GS), 2024 WL 749636, at *3 (S.D.N.Y. Feb. 23, 2024).

Plaintiff argues that a provision limiting Martinez's possession of Plaintiff's confidential materials is a reasonable request given Plaintiff's vulnerabilities caused by Martinez, and Plaintiff's status as a rape survivor. *See* (Doc. 110 at 2). She contends that Martinez, who has been convicted of sexually assaulting Plaintiff and is currently serving a nine-year prison sentence for doing so, should not be able to retain copies of Plaintiff's mental health, therapy, and medical records, thereby making it possible for him to distribute Plaintiff's private medical records to other inmates or anyone else who may assist him in retaliating against Plaintiff. Plaintiff also cites to the New Mexico Victim's Rights Act, N.M. Stat. § 31-26-4, which incudes a right "to be treated with fairness and respect for the victim's dignity and privacy" and to "be reasonably protected from the accused." This provision applies to criminal proceedings in state court, but the policy behind it supports Plaintiff's arguments. Further, the Court agrees with Plaintiff that the public has an interest in rape victims reporting sexual assaults to prevent future sexual assaults, and the best way to ensure that reporting is to protect the privacy and dignity of rape victims during both criminal and civil litigation. The Court finds that Plaintiff has presented good cause for a provision limiting Martinez's ability to retain confidential discovery material produced by Plaintiff in this case, including Plaintiff's medical and mental health records, as well as the body camera video footage of Martinez's sexual assault of Plaintiff.[15]

---

[15] In a recent similar case, *Austin,* 2024 WL 749636, the court considered the plaintiff's argument for an AEO provision in a confidentiality order that would prohibit the plaintiff's alleged rapist, a third-party defendant in the case, from

Martinez has presented no legal argument or authority for why the Court's discretion under Rule 26(c) is not broad enough to encompass a confidentiality order limiting disclosure of confidential documents to attorney's eyes only, let alone a less restrictive limitation such as Section 4 that allows the client to view the confidential materials but not to retain a copy of those materials in his possession. Martinez merely asserts his counsel "has been unable to locate any provision in the Federal Rules of Civil Procedure, including Rule 26, which allows an opposing party to dictate the manner in which counsel communicates with his/her client." (Doc. 101). Martinez's counsel has not looked hard enough. *See, e.g., American Heartland Port, Inc. v. Am. Port Holdings, Inc*., 2014 WL 12605549, at *4 (N.D.W. Va. Apr. 7, 2014) (noting the entry of an agreed confidentiality order which provided that "a party disclosing certain information could designate the material either 'Confidential' or 'Highly Confidential,' the main difference being for any Protected Material designated as 'Highly Confidential' Plaintiffs ... may view–but only in the offices of their attorneys, … such Protected Material but may not copy, retain, remove, make notes of, possess, or otherwise have in their possession any such Protected Material designated as 'Highly Confidential'" (internal quotation marks omitted)); *Christoffersen v. Equifax Info. Servs., LLC*,

---

viewing the plaintiff's medical records. Although the court rejected the plaintiff's argument for the AEO restriction based on "a potential improper disclosure or use of [the plaintiff's] medical records by [the alleged rapist]," the court accepted the plaintiff's argument that the AEO restriction might be justified by the harm which the plaintiff might suffer from "the very fact that [the alleged rapist] would be privy to the information set forth in the records." *Id.* at *5. The court found that the plaintiff "clearly has a legitimate privacy interest in his personal medical information," and that "interest is especially acute since the medical information in question doubtless contains intimate details of [the plaintiff's] sexual, psychological, and emotional life," concluding that it was "understandable that [the plaintiff] would not want those records to be viewed by [the alleged rapist] given the nature of the allegations in th[e] case." *Id.* However, the court found that the plaintiff's privacy interest had to be weighed against the interest of the opposing party in "being able to retain and consult freely with an attorney and to [actively] participate in the [litigation] process." *Id.* The court ultimately held that, "[b]alancing the parties' competing interests, and bearing in mind that it is [the plaintiff's] burden to establish good cause, … an AEO designation is justified in this case only for a limited subset of [the plaintiff's] medical records: those pertaining to his relationships with intimate partners." *Id.* The Court reaches a similar conclusion here, except that it will apply the restriction of Section 4 to all of Plaintiff's confidential information. The reason is that Section 4 is less restrictive than the AEO designation in *Austin*. It allows Martinez to view Plaintiff's confidential materials, whereas the AEO clause in *Austin* restricted the alleged rapists access to the materials entirely.

No. 25-CV-931 (JMB/DJF), 2025 WL 1904414, at *2 (D. Minn. July 10, 2025) (protective order entered providing that "Plaintiff may also view confidential documents designated as 'Attorneys Eyes Only,' but she may not retain copies of confidential documents without prior consent from the party who produced the document"); *see also Findigs, Inc. v. Orser*, No. 1:22-CV-7404-LGS, 2022 WL 17830717, at *7 (S.D.N.Y. Dec. 21, 2022) (Rule 30(b)(6) designee "authorized to view Highly Confidential – Attorneys' Eyes Only Material" but "not permitted to retain copies of such materials"); *Compass, Inc. v. Real Est. Bd. of N.Y., Inc*., No. 1:21-CV-2195, 2022 WL 2257032, at *7 (S.D.N.Y. June 23, 2022) (same).

## III.    CONCLUSION

For the reasons discussed above, the County's Motion to Strike Plaintiff's Reply in Support of Her Motion for Entry of Confidentiality Order (Doc. 116) is **DENIED**, while Plaintiff's Motion for Entry of Confidentiality Order (Doc. 87) is **GRANTED**. The Court will enter Plaintiff's Proposed Confidentiality Order as modified by this Order separately on the docket.

**IT IS SO ORDERED this 10th day of September, 2025.**

_____

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE