**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

T.H.,

  *Plaintiff*,

  v.

MICHAEL ANDREW MARTINEZ,                    No. 2:24-cv-887-MIS-KRS
in his individual capacity,

  *Defendant*,

and

DOÑA ANA COUNTY,

  *Intervenor*.

### ORDER RE: [134] COUNTY'S MOTION TO COMPEL

THIS MATTER is before the Court on the Motion To Compel ("Motion"), filed by

Intervenor Doña Ana County ("the County"). *See* (Doc. 134). The Motion seeks an order

compelling Plaintiff to supplement or amend her responses to the County's written discovery

requests. After carefully considering applicable legal principles, the parties' arguments, and the

record as a whole, the Court has determined that the Motion should be granted in part and denied

in part, as set forth more fully below.

### Discussion

### I.    Preliminary Issues

####    A.    Compliance With Rule 37(a)

Prior to filing a motion to compel, the party seeking to compel further disclosure or

discovery must, in good faith, confer or attempt to confer with the opposing party in an effort to

obtain the further disclosures or discovery in question without court action. *See* FED. R. CIV. P.

37(a)(1). The good faith conferral requirement of Rule 37(a)(1) involves "a more sincere effort to

see if the dispute can be resolved" than merely "exchanging cursory and perfunctory emails or letters which simply restate each other's positions on the items of discovery." *Benavidez v. Sandia Nat'l Laboratories*, 319 F.R.D. 696, 723 (D.N.M. 2017). Conferral means "to 'converse, confer, compare views, consult, and deliberate.'" *Mayer Botz Enters. LLC v. Cent. Mut. Ins. Co.,* No. 1:21-cv-992-MIS-LF, 2023 WL 112270, at *1 (D.N.M. Jan. 5, 2023) (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) (internal quotation and citation omitted)). "It is hard to square the idea of a conference where parties are bringing and comparing views with an exchange of letters separated by days." *Benavidez,* 319 F.R.D. at 723 (internal citations omitted). Instead, the meet and confer requirement requires a simultaneous exchange of views*,* usually during a "face to face, or at a minimum, a telephonic conference wherein counsel try in 'good faith' to resolve the dispute by comparing views, further explaining or clarifying their position, and if appropriate, offering a compromise in order to resolve the dispute." *Zuniga v. Bernalillo Cnty.*, No. CV 11-877 RHS-ACT, 2013 WL 12333609, at *2 n.1 (D.N.M. Jan. 10, 2013). "Emails separated by more than a few minutes likely will not—alone—satisfy the 'confer' requirement. At some point, the parties must come together." *Benavidez,* 319 F.R.D. at 724.

The letters attached to the County's Motion as proof of compliance with Rule 37(a)[1] are not necessarily perfunctory, and were perhaps a good place to start in attempting to meet the "good faith" requirements mandated by Rule 37(a)(1). *See id.* But by only sending two written letters, the County "simply made a demand" without truly complying with the meet and confer

---

[1] *See* (Doc. 134-1 (County's July 8, 2025 Discovery Letter); Doc. 134-2 (Plaintiff's July 24, 2025 Discovery Letter); Doc. 134-3 (County's August 12, 2025 Discovery Letter)).

requirement. *Zuniga,* 2013 WL 12333609, at *2 n.1. In fact, the County's second letter reiterated the same arguments the County made in its first letter, and was later filed in virtually identical form as the County's Motion to Compel. There is nothing in the record to indicate that a face-to-face or telephone conference took place at which the parties simultaneously exchanged views concerning the alleged deficiencies in Plaintiff's discovery responses. *See Sundance Servs., Inc. v. Admiral Ins. Co.,* No. CV 21-270 WJ/GBW, 2022 WL 487009, at *4 (D.N.M. Feb. 17, 2022) ("Plaintiff did not attempt to reach Defendant by telephone at any point for a simultaneous exchange of views concerning the alleged deficiencies in Defendant's discovery response."). Thus, the Court finds that record presently before Court does not demonstrate that the County satisfied the good-faith conferral requirement of Rule 37(a).

Similarly, the County accuses Plaintiff of failing to confer in good faith with regard to more recent discovery motions that have been filed. The sheer number and pace of discovery motions that have been filed in the case is an indication that one or both sides are not trying very hard to resolve discovery disputes—they are either not conducting Rule 37(a) conferences at all, or not doing so in a genuine attempt to resolve what are frequently resolvable disagreements. The Court has previously noted this failure. *See* (Doc. 148). As before, however, the Court chooses, in the interest of avoiding further delay, to decide the present dispute notwithstanding the failure to confer. *See Benavidez*, 319 F.R.D. at 724. But the parties are forewarned that the Court may not always do so, and the Court will likely not grant fees when there has been a failure to comply with the meet and confer requirement.

**B.**      **Waiver**

The Court is also concerned by the briefing by both parties concerning the Motion. The County does little more than cite to broad, boiler-plate legal principles applicable to discovery in general. Beyond that, the County mostly just asserts that Plaintiff's discovery responses are incomplete, or that the information sought by the discovery request is relevant, without making any effort to explain what information is missing or why the information sought is relevant. *See, e.g., Thompson v. State Farm Mut. Auto. Ins. Co.*, 789 F. App'x 90, 93 (10th Cir. 2019) (finding a waiver where the defendant provided no substantive explanation and cited no legal authority supporting its position). For her part, Plaintiff fails to make any argument whatsoever in defense of her responses to several of the discovery requests at issue in the Motion. Instead, Plaintiff mostly argues broad rhetorical principles without tying those arguments to specific discovery responses challenged by the County, or even to any applicable discovery principles that govern her responses. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) (it is not the court's duty to construct legal or factual arguments on a party's behalf). The poor briefing on the Motion could be construed as waivers by both sides that essentially cancel each other out.

This is at least the second time that the Court has cautioned the parties on their failure to adequately develop the legal and factual arguments in support of their respective positions. *See* (Doc.148). Once again, in the interest of moving the case along, the Court will proceed to address the Motion notwithstanding these deficiencies in the briefing. Once again, however, any request for fees will be denied. Furthermore, the Court will impose restrictions on the filing of any additional discovery motions, which will be set out at the end of this order.

### C.       Plaintiff's Thematic Arguments and Objections

Plaintiff's response to the County's Motion focuses on several broad, thematic issues, which have not been properly raised or presented in a manner in which the Court can rule on them at this time.

### 1.       Objections Based On Scope Of Allowable Discovery By The County (Consent Issue).

In a number of responses to the County's discovery requests, Plaintiff asserts that the scope of discovery to which the County is entitled is limited to whether Martinez was acting in the scope of his duties when he sexually assaulted Plaintiff, and to the issues of compensatory and punitive damages. In support, Plaintiff cites the Intervention Order (Doc. 63). A generic citation to the Intervention Order without further explanation or argument, however, does not sufficiently explain Plaintiff's argument. As far as the Court can tell, the Intervention Order does not address the issue of the scope of discovery to which the County is entitled. Nor does the Intervention Order discuss the role of the County in this litigation.

In general, intervenors are entitled to conduct discovery necessary to the reason for their intervention. *See Siesta Vill. Mkt., LLC v. Perry*, No. CIV.A. 3:06CV0585-D, 2007 WL 445985, at *2 (N.D. Tex. Feb. 12, 2007). The rationale of the Intervention Order for allowing the County to intervene is the same rationale relied on in a number of other cases from this district in which a governmental body was permitted to intervene—the County's legally protectible interest in the case based on provisions of the New Mexico Tort Claims Act, which make the County potentially liable for any damages, particularly punitive damages, awarded in the case.[2] The intervention

---

[2] *See* (Doc. 63 at 3 (permitting the County to intervene because, "[s]hould the factfinder determine that Martinez was acting within the scope of his duties as a public employee, Martinez may be fully indemnified under the New Mexico Tort Claims Act by the County. Further, the County may then be responsible for paying any punitive damages awarded

5

order in those other cases make clear that the scope of the intervention was limited to the issue on which the governmental body's potential liability turned, i.e., whether the defendant government employee was acting within the scope of his job duties at the time of the alleged tort.[3]  Furthermore, the pleading submitted by the governmental entity as the basis for its intervention in each of those other cases was a complaint that clearly specified the scope of intervention by seeking only a declaration that the defendant was not acting within the scope of his duties at the time the acts alleged in the underlying lawsuit.[4]  In fact, in one of the cases, counsel for the intervening governmental entity represented to the court that "no additional discovery would be necessary," and that, "in his experience with similar cases, the jury typically decides whether the employee was acting within the scope of duty" and the intervening governmental entity usually just "participates in settlement discussions after being permitted to intervene." *Thorn-Freeman*, 2020 WL 7056097, at *2.

---

…." (citing N.M. Stat. Ann § 41-4-20 and N.M. Stat. Ann. § 41-4-4(C)).

[3] *See, e.g., Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1149 (D.N.M. July 22, 2021) (Browning, J.) ("Risk Management states that it wishes to intervene, so that it can argue that Bearden's 'violent rapes ... were outside the course and scope of his employment and outside the scope of his duties.'"); *Thorn-Freeman v. Valdez*, Civ. No. 20-448 JAP/GJF, 2020 WL 7056097, at *5 (D.N.M. Dec. 2, 2020) (Parker, J.) (stating that allowing Risk Management to intervene will "contribute to the factual development of the scope of duty issue"); *Rosales v. Bradshaw*, No. 20-cv-751 DHU-JHR, Doc. 24 (D.N.M. Sept. 8, 2020) (Browning, J.) (allowing Board of County Commissioners of Chaves County to intervene to assert the position that if the defendant did what he was alleged to have done then that was something that was not within his scope of duties); *Morgan v. Carrejo*, No. 1:12-cv-583 WPJ-LAM, 2013 WL 12330025, at *4 (D.N.M. May 28, 2013) (Johnson, J.) (concluding that Risk Management's obligation to pay damages was related to whether the defendant "was acting in the scope of duty," and therefore it had an interest in seeking an answer to that question); *see also Soto v. Galvan*, No. CV 06-738 WFD/LG, 2007 WL 9734042, at *2 (D.N.M. Apr. 12, 2007) (Garcia, M.J.) (allowing Risk Management to intervene); *Romero v. Bradford*, No. 08-cv-1055 MCA/LFG, 2009 WL 10708255, at *5 (D.N.M. Apr. 13, 2009) (Armijo, J.) (allowing Albuquerque Public Schools to intervene).

[4] *E.g., Ortiz*, No. CIV 18-0028 JB/LF, Doc. 36-1; *Thorn-Freeman*, Civ. No. 20-448 JAP/GJF, Doc. 32; *Rosales*, No. 20-cv-751 DHU-JHR, Doc. 28; *Morgan,* No. 1:12-cv-583 WPJ-LAM, Doc. 52; *Soto*, No. CV 06-738 WFD/LG, Doc. 44; *Romero*, No. 08-cv-1055 MCA/LFG, Doc. 32.

6

In the present case, the Intervention Order expressly allowed the County to file an answer to Plaintiff's complaint against Martinez, *see* (Doc. 63 at 5), rather than directing the County to file an Intervenor Complaint seeking a Declaratory Judgment on the scope of duties question as was done in the other cases granting intervention. The answer filed by the County includes as the Tenth Affirmative Defense the allegation that Plaintiff consented to Martinez's sexual assault. *See* (Doc. 86 at 11). Accordingly, based on the pleadings, consent is an issue in the case. And on a motion to compel, the issue for this Court is whether requested discovery is relevant to the claims and defenses in the pleadings, not whether the party seeking the discovery may ultimately be successful or unsuccessful in pursuing those claims or defenses. *See Garcia v. State Farm,* No. 1:24-cv-1286 KK/KRS, 2025 WL 2966364, at *10 & n. 19 (D.N.M. Oct. 21, 2025). The Court is aware that, rather than challenging the County's right to assert consent as a defense in its answer independent of Martinez's answer, Plaintiff has chosen to argue on summary judgment that the County may not raise its own separate consent defense from Martinez, or at least that, if it does, it is constrained by the same legal principles that prevent Martinez from presenting a consent defense. That argument, however, is currently before the district judge presiding over the case through Plaintiff's pending motion for partial summary judgment.

Notwithstanding the unresolved issue regarding whether consent will have any role in this litigation, the Court finds that the County's Motion may still be addressed. The County's Motion focuses on Plaintiff's damages claims and the issue of Plaintiff's credibility as the justification for the requested discovery. *See* (Doc. 134 at 21-22; Doc. 158 at 1-4). Indeed, the County only directly addressed the issue of consent in its reply brief, after Plaintiff raised it in her response. *See* (Doc. 158 at 4-5). In the end, the Court finds that the requested discovery that is upheld in this order is

relevant on the issues of damages and credibility, and that, to the extent that the upheld discovery might also be relevant to the issue of consent, the upheld discovery requests are not so burdensome and oppressive as to disallow them. The Court's ruling in this regard applies only to the County's written discovery requests at issue in this Motion, and does not foreclose a different result if the same issue is presented in the context of other discovery requests not currently before the Court.

### 2.    Objections Based on Federal Rule of Evidence 412

Plaintiff repeatedly argues that the County's discovery requests are an attempt to impugn Plaintiff's moral character to justify Martinez's sexual assault in violation of Federal Rule of Evidence 412. Rule 412 provides that evidence offered to prove that a victim engaged in other sexual behavior, or evidence offered to prove a victim's sexual predisposition, is not admissible in a civil or criminal proceeding involving alleged sexual misconduct. *See* FED. R. EVID. 412(a). However, "[i]n a civil case, the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." FED. R. EVID. 412(b)(2). The County responds that its discovery requests do not seek information related to the matters covered by Rule 412(a). The Court finds that it need not address this issue at this time for at least three reasons. First, the issue is primarily an evidentiary one that this Court would only consider in the context of a discovery ruling if the Plaintiff had filed a Rule 26(c) motion for protective order as to the County's written discovery requests, which she has not done.[5] Second, a number of times, Plaintiff raised the objection and then went on to answer the discovery request, making it unnecessary for the

---

[5] Plaintiff has since filed two motions for protective order that raise similar objections, but those motions relate to other discovery sought by the County, *see* (Docs. 204, 207), not to the County's written discovery requests.

Court to rule on the objection. And third, the Court allows or disallows the County's discovery requests because they seek relevant or irrelevant information, as the case may be, not having to do with Plaintiff's sexual behavior or sexual predisposition.

### 3.    Objections Based On "Institutional Betrayal Trauma" and "DARVO[6]."

Argued extensively in Plaintiff's response brief, and sprinkled throughout her discovery responses, is the issue of "institutional betrayal trauma" and the concept of DARVO. Whether the County's litigation tactics in this case amount to DARVO, and/or have the result of causing Plaintiff to suffer from "institutional betrayal trauma" might be an argument for a Rule 26(c) protective order. But as noted already, there is no Rule 26(c) protective order motion before the Court concerning the County's written discovery requests. And while the concept of proportionality requires the Court in assessing relevancy to consider the degree to which a discovery request is oppressive,[7] the Court finds no need to conduct such an analysis with respect any of the County's written discovery requests. This is because for some of the requests Plaintiff responded despite her objections, and for others, as set forth *infra*, the Court either narrows the discovery request or denies it entirely as being overly broad.

---

[6] DARVO stands for Deny, Attack, and Reverse Victim and Offender.

[7] *See, e.g., Moses v. Halstead,* 236 F.R.D. 667, 671 (D. Kan. 2006) ("When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery…   is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure").

### III.    The County's Interrogatories

**Interrogatory 7**

Interrogatory 7 asks Plaintiff to list the number of times she communicated with Martinez after April 30, 2023, and, with regard to each, to list the date and substance of the communication. (Doc. 134-7 at 2). Plaintiff responded that she never initiated communication with Martinez; that Martinez "repeatedly called and harassed" her in the wake of the sexual assault; that those calls happened on or about May 2-6, 2023; and that audio records of the calls are in the possession of defense counsel. (*Id.*). Plaintiff also quoted her statement to Martinez made at his sentencing. The County argues that Plaintiff did "not fully respond to the County's Interrogatory," and that she should be compelled to "provide the complete response as to the substance of her communication with [Martinez] and the number of times she communicated with him." (Doc. 134 at 9).

The Motion is granted in part and denied in part without prejudice as to Interrogatory 7. It is unclear whether Plaintiff's response represents a complete answer. Not having objected to Interrogatory 7, the Court presumes that Plaintiff provided a complete response regarding all communications responsive to the interrogatory, but directs her to file a supplemental response that either confirms that the recorded calls she references are the only communications between her and Martinez after April 30, 2023, or supplements her answer with any additional communications between her and Martinez during that period of time. Her supplemental response should also specifically list each call by date to the best of her memory, as requested in the Interrogatory. Regarding the County's request that Plaintiff be compelled to provide the substance of her communications, the County fails to explain why Plaintiff's reference to audio recordings in the County's possession is insufficient. *See, e.g., Firstcom, Inc. v. Qwest Corp.*, No. CV 04-

10

0995(ADM/JJG), 2006 WL 8443647, at *3 (D. Minn. Feb. 16, 2006) (Rule 33(d) gives a responding party the option of specifying records that contain the answer to an interrogatory, provided the records in question are records of the responding party).[8] Even if Rule 33(d) technically does not apply, if the recordings exist and there is no reason to doubt their authenticity, accuracy, and completeness, there would seem to be no legitimate reason to require Plaintiff to describe the substance of those conversations by memory. Notwithstanding Plaintiff's failure to object to the request, the Court would likely find in those circumstances that requiring her to describe the substance in her interrogatory response would be unnecessary and unduly burdensome.[9]

As far as the Court can tell, the parties never engaged in good faith discussions over whether the recordings constitute a sufficient response to the portion of Interrogatory 7 asking about the substance of the communications. Therefore, the Court will deny the Motion without prejudice with respect to Interrogatory 7's request that Plaintiff state the substance of each communication. If the County wishes to challenge the existence or sufficiency of the recordings as to the substance of the communications, the parties should follow the procedure that will be set out at the end of this order to resolve their disagreement.

---

[8] The County has stated in another filing that Plaintiff recorded her conversation with Martinez on May 2, 2023. (Doc. 96 at 10 (¶ 7)). This suggests to the Court that the recordings in question were all made by Plaintiff and therefore should have been produced by her in discovery, potentially satisfying Rule 33(d).

[9] The Court is aware that Plaintiff failed to object in her response to Interrogatory 7 on the basis of undue burden (or anything else for that matter). Normally, a party's failure to object in her written response constitutes a waiver of objections. *See, e.g., Cardenas v. Dorel Juv. Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005). But a court has discretion to depart from general waiver rules. *See, e.g., Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992). And since the Court is denying the Motion without prejudice on this issue, Plaintiff may supplement her response by asserting an undue burden objection if the parties are unable to reach agreement.

11

**Interrogatory 10**

Interrogatory 10 asks for the names and contact information for all individuals that were in Plaintiff's car on April 30, 2023, and a list of the date and substance "of all communication [Plaintiff] ha[s] had with each individual since April 30, 2023." (Doc. 134-7 at 3). Plaintiff objected to answering on three grounds: (1) relevance ("Plaintiff's contact with the people in the car prior to her sexual assault on April 30, 2025, is not relevant to the claims and defenses in this matter"); (2) lack of proportionality ("contacting [ ] these witnesses is a waste of time and resources"); and (3) harassing and offensive ("an attempt to impugn the Plaintiff's moral character to justify the sexual assault in violation of Rule 26(b)(1) and Federal Rule of Evidence 412"). Plaintiff then went on to provide a partial response in which she stated:

> The plaintiff does not know the identity of the other passengers in the vehicle because they were Harleigh's friends, and she does not think she has spoken with them since the subject incident. Harleigh Wilkins was in the vehicle. Plaintiff has had various conversations with Harleigh. The plaintiff has only spoken to her briefly about the incident. In Plaintiff's words:
>
> > "I told her I was kidnapped and sexually assaulted by Martinez. I told her about how he made me unzip my jacket."

(Doc. 134-7 at 3).

The Court finds that requesting the identity and contact information for the individuals in the car is reasonable, and not the least bit oppressive or burdensome. To the extent that Interrogatory 10 seeks information about communications with Ms. Wilkens (or anyone else) that do not relate to the claims Plaintiff makes in this case, Martinez, or what happened on the night of the automobile accident, the Court sustains Plaintiff's objection based on relevance. "[W]hen the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request." *Moses*, 236 F.R.D. at 671; *see also*

12

*Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) ("The proponent of a motion to compel bears the initial burden of proving that the information sought is relevant." (internal quotation marks and citation omitted)). The County asserts that "information concerning Plaintiff's communication with individuals that were present during her interaction with Defendant Martinez is relevant" (Doc. 134 at 10), without explaining *why* it is relevant. The County has not met its burden of demonstrating relevance as to communications unrelated to the claims Plaintiff makes in this case, Martinez, or the accident. The Court concludes that Interrogatory 10 is too broad in that it seeks the date and substance of *all* communications with the persons in the car since April 30, 2023, the vast majority of which may have nothing to do with this case.

Accordingly, the Motion is granted in part and denied in part as to Interrogatory 10. Plaintiff is directed to provide the missing contact information for Harleigh Wilkins, and to confirm under oath that she does not know the identity of the others. She should also supplement her response by making a good faith effort to say how many conversations she had with Ms. Wilkens that relate to the claims Plaintiff makes in this case, Martinez, or the night of April 30, 2023, when they occurred, and what the substance of the conversations were. If she only has had the one such conversation with Ms. Wilkens, the substance of which is stated in her response, then she should say that. But as written, especially with the reference to "various conversations," the Court cannot tell whether Plaintiff is withholding information about that conversation or other relevant conversations she has had with Ms. Wilkens. Plaintiff's response also states that she does not "think" she has communicated with anyone other than Ms. Wilkins concerning the claims Plaintiff makes in this case, Martinez, or the accident. But if, as she stated in her response, Plaintiff

does not know who those others are, then she should be able to say for certain that she has not had any communications with them since the accident related to her claims, Martinez, or the accident.

**Interrogatory 11**

Interrogatory 11 was the subject of another motion to compel filed by the County on November 14, 2025. (Doc. 168). The Court granted the motion, *see* (Doc. 190), and Plaintiff filed objections to that order. *See* (Doc. 193). Plaintiff's objections are still pending before the presiding judge. Therefore, the Court need not address Interrogatory 11 further at this time.

**Interrogatory 12**

Interrogatory 12 asks Plaintiff to list the name, address, and telephone number of each witness that may testify concerning the liability and damages allegations contained in the complaint, and, with respect to each individual listed, state the information known to the witness and their proposed testimony. (Doc. 134-7 at 5). Plaintiff answered, "See Plaintiff's Rule 26 Disclosures and Answers to Interrogatories Numbers 5 and 6." *Id.* The County argues without further explanation that Plaintiff's answer "does not fully respond," and that Plaintiff should be required to "provide the complete response to this Interrogatory and provide each witnesses' proposed testimony." (Doc. 134 at 13). Not only does the County not explain what information is missing from Plaintiff's response, it does not provide the Court with Plaintiff's Rule 26 Disclosures or her answers to Interrogatories 5 and 6 so that the Court can assess the completeness of the response for itself.

Case law generally supports incorporation of other interrogatory responses if the other responses fully respond to the interrogatory. *See, e.g., S.E.C. v. Berry*, No. C07-04431 RMW HRL, 2011 WL 2441706, at *3 (N.D. Cal. June 15, 2011) ("Berry argues that the SEC's responses to

14

Interrogatory Nos. 2 and 4, which refer her to the SEC's substantive responses to Interrogatory Nos. 1 and 3, are not good enough. This Court disagrees."). Case law is somewhat mixed on answering an interrogatory by referencing Initial Disclosures. *See, e.g., MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 231 F.R.D. 106, 108 (D.D.C. 2005) (stating that there was "no basis whatsoever for … order[ing] any further supplementation" where defendant referred to persons "named in response to Interrogatory 1" and "[a]dditionally … incorporated by reference those persons it originally identified in its Initial Disclosures").[10] Although redundant interrogatories about the same subject matter as required disclosures are generally discouraged, *see, e.g., Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 503 (D. Kan. 2006), the information sought by Interrogatory 12 is not co-extensive with the information required by Rule 26(a). Interrogatory 12 seeks the contact information for each "witness" (versus "each individual likely to have discoverable information," FED. R. CIV. P. 26(a)(1)(A)(i)), and additionally asks for the "information known to the witness, and his or her proposed testimony" (versus "the subjects of [the discoverable] information" each of the identified individuals is likely to have, *id.*). Notwithstanding that neither party has provided the Court with Plaintiff's Initial Disclosures, the Court directs Plaintiff to file a supplemental response answering Interrogatory 12 without reference to those Disclosures. *See, e.g., Drennon-Gala v. Holder*, No. 1:08-CV-3210-BBM, 2009

---

[10] *Compare Heuskin v. D&E Transp., LLC*, No. CV 19-957 MV/GBW, 2020 WL 1450575, at *3 (D.N.M. Mar. 25, 2020) ("The Federal Rules require responding parties to answer interrogatories 'separately and fully in writing under oath.' Fed. R. Civ. P. 33(b)(3). Responses by reference to another document are therefore insufficient."); *Doe ex rel. Doe v. White*, No. 08-CV-1287, 2009 WL 3098724, at *4 (C.D. Ill. Sept. 22, 2009) (citing *Davis v. City of Springfield*, Nos. 04-3168, 07-3096, 2009 WL 268893 * 5 (C.D. Ill. Jan. 30, 2009) ("Defendant may not cite generally to its Initial Disclosures, but must supplement its response to specifically identify which witnesses listed in its Initial Disclosures are responsive...."), and *Dana Corp. v. Am. Standard*, No. 3:92-CV-581RM, 1994 WL 228537, at *2 (N.D. Ind. Apr. 15, 1994) ("ASI is entitled to complete and specific responses to its interrogatories and production requests without general references to plaintiffs' mandatory pre-discovery disclosures.")).

WL 10668307, at *6 n. 4 (N.D. Ga. Sept. 23, 2009) (where Initial Disclosures did not "explain how each violation caused the injury or damages," reference to those disclosures was an inadequate response to the interrogatories). In supplementing her response, Plaintiff is required to identify witnesses *known to her at this time*.[11]  And her response to the "information known to the witness, and his or her proposed testimony" need not describe everything the witness knows or set forth the witness's proposed testimony in full. Rather Plaintiff need only describe the principal or material information known by the witness to which Plaintiff expects that witness will testify.[12]

**Interrogatory 13**

Interrogatory No. 13 asks for a list of Plaintiff's activities in the 48 hours preceding and the 48 hours following her contact with Martinez. (Doc. 134-7 at 6). Plaintiff objected to Interrogatory 13 on the grounds of relevance, institutional trauma, and Federal Rule of Evidence 412. After objecting to the interrogatory, Plaintiff responded,

> Not withstanding this objection Plaintiff states as follows:
>
> I don't recall what I did 48 hours prior to the crash. Immediately before the crash, I was with friends at a location where there was a bonfire. I was hanging out with friends. I decided I was ready to go home. We left and were involved in a car crash.
>
> After the crash, I was arrested, taken to the hospital, raped by the Deputy, then booked into the jail. I was picked up by Jack, who took me to eat food. I could not eat the food because I felt used and abused

---

[11] If further investigation uncovers the identities of additional witnesses, Plaintiff of course has a duty to supplement her interrogatory response accordingly. *See* FED. R. CIV. P. 26(e).

[12] *See, e.g., Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. A-11-CV-542-LY, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) ("Where an interrogatory answer 'as a whole disclose[s] a conscientious endeavor to understand the question[ ] and to answer fully [that question],' a party's obligation under Rule 33 is satisfied." (quoting 8B Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2177 (3d ed. 2010)); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents."); *Williams*, 235 F.R.D. at 502 (holding that interrogatories are "overly broad to the extent [they] ask[] for 'every fact' that supports an identified allegation or claim").

> and so I went home and slept for about an entire day. I was depressed
> and frightened.

(*Id.*).

While the County might find this response to be "minimal" or "disappointing," "the Court does not find that it is legally deficient." *Heuskin v. D&E Transp., LLC*, No. CV 19-957 MV/GBW, 2020 WL 1450575, at *4 (D.N.M. Mar. 25, 2020). Furthermore, the language "notwithstanding this objection" signals that, even though Plaintiff objected to the interrogatory, she answered it anyway. [13] Therefore, the Court need not rule on the objections. To the extent that Plaintiff withheld any information on the basis of her objections, however, the Court will grant the County's motion and compel her to supplement her response. Plaintiff is ordered to file a supplemental response providing any responsive missing information, or confirming that she has fully responded to Interrogatory 13 notwithstanding her objections, and that she has not withheld any information based upon her objections, or stating the nature of the information she has withheld from disclosure and the legal basis for the claim of privilege to withhold that information.

## IV.    Requests For Production ("RFP")

### RFP 3

RFP 3 seeks all documents referred to in Plaintiff's responses to the County's Interrogatories or relied upon in answering the interrogatories. (Doc. 134-8 at 2). Plaintiff objected "as compound, unduly burdensome, cumulative, and overbroad and not proportional to the needs

---

[13] This is in contrast to a "[c]onditional response[]" whereby the party "asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections." *Reed Auto of Overland Park, LLC v. Landers McLarty Olathe KS, LLC*, No. 19-02510-JWB-KGG, 2020 WL 5118103, at *2–3 (D. Kan. Aug. 31, 2020) (stating that conditional responses are "invalid, unsustainable, and [ ] violate common sense" because they do not allow the requesting party any way of knowing whether information or documents have been withheld based on the objection (internal quotation marks and citations omitted)).

of the case," and then responded that she "relied upon those documents identified in her Rule 26 disclosures, previously provided," and the affidavits of her therapist, also provided. (*Id.*). The County argues that it is unable to determine whether Plaintiff has withheld any information. (Doc. 134 at 14). The Court agrees, and orders Plaintiff to supplement her response to confirm that she has produced all documents responsive to this request, or to identify any documents she has withheld and the legal basis for withholding those documents.

### RFP 4

RFP 4 seeks all documents "relating in any way to any version of the allegations of the Plaintiff's Complaint." (Doc. 134-8 at 2). Plaintiff objected "as compound, unduly burdensome, cumulative, and overbroad and not proportional to the needs of the case," and also stated that she did "not understand this request of [sic] production" and that the "documents related to this subject incident have been identified in Plaintiff's Rule 26 disclosures and have been provided or are in the possession of Defendants." (*Id.*). The County argues that it is unable to determine whether Plaintiff has withheld any information. (Doc. 134 at 15). The Court agrees. However, the Court also agrees with Plaintiff that the language "relating in any way to any version of the allegations" is impossibly vague and indefinite. The County's Motion is therefore denied as it pertains to RFP 4.

### RFP 6

RFP 6 asks for texts, emails, or other written communications between Plaintiff and any third-party (other than attorneys) concerning Defendant Martinez. (Doc. 134-8 at 3). Plaintiff's response references a link that includes text messages between her and a friend, her mother, and a supervisor, as well as text messages between her and her therapist and her former boyfriend (which

18

she apparently "has [already] provided" the County). The County asserts that Plaintiff "failed to provide all of her communications concerning Defendant Martinez." (Doc. 134 at 15). But the County does not explain or support its assertion that Plaintiff is withholding documents. It could be that the referenced text messages are the only written communications concerning Martinez that Plaintiff has in her possession or control. The problem is that it is impossible to say one way or the other from Plaintiff's response. The Motion is granted as to RFP 6 insofar as Plaintiff is ordered to supplement her written response, either with or without the production of additional documents, and either confirming that she has produced all responsive documents in her possession, custody, or control, or identifying any documents she has not produced and citing the legal basis for withholding those documents.

**RFP 7**

RFP 7 seeks "any and all cell phone records from April 29, 2023, to September 19, 2023." (Doc. 134-8 at 3). Plaintiff objected that the request is overbroad, not proportional to the needs of the case, and constitutes an unnecessary invasion of Plaintiff's privacy. The Court agrees with Plaintiff.

The County argues that it "is entitled to information about the communication and activities the Plaintiff engaged in and around the time of her contact with Defendant Martinez" (Doc. 134 at 16), but does not explain why it is entitled to know about any and all of Plaintiff's communications and activities from April 29, 2023 to September 19, 2023. To begin with, it is unclear what types of records the County is seeking by the term "cell phone records." Assuming the County is seeking essentially the entire contents of Plaintiff's cell phone, the County's argument that "[n]othing about this request seeks confidential information" ignores that the Supreme Court has found there

19

is a significant privacy interest in private cell phones. *See Riley v. California*, 573 U.S. 373, 393-95 (2014). Because cell phones, like computers, can contain enormous amounts of information, discovery of their contents should be limited to "specific types of material." *United States v. Ortega*, No. 21-CR-665 MV, 2023 WL 2712533, at *2 (D.N.M. Mar. 30, 2023).[14]

"When determining whether to grant a motion to compel the forensic imaging of a cell phone or other electronic device, courts have considered whether the examination will reveal information that is relevant to the claims and defenses in the pending matter and whether such an examination is proportional to the needs of the case given the cell phone owner's compelling privacy interest in the contents of his or her cell phone." *Hardy v. UPS Ground Freight, Inc.*, No. 3:17-CV-30162-MGM, 2019 WL 3290346, at *2 (D. Mass. July 22, 2019). The County has failed to justify the scope of its request when measured against Plaintiff's legitimate privacy concerns. *See Ramos v. Hopele of Fort Lauderdale, LLC*, No. 17-62100-CIV, 2018 WL 1383188, at *1-2 (S.D. Fla. Mar. 19, 2018) (request denied where it was "not limited in any way, whether by search term, date, or identity of the sender or receiver"). The Court accepts for purposes of argument that Plaintiff's text messages relating to the claims Plaintiff asserts in this case, Martinez, or the automobile accident, and her telephone call log may have some relevance to Plaintiff's sexual

---

[14] *See, e.g., Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286, 303 (W.D. Ky. 2025) (Defendant's request that covered "all photographs, digital images, emails, instant messages, texts or other documents sent to, or received by Plaintiff on or after 4:00 p.m. EST on March 15, 2023, through 6:00 a.m. EST on March 20, 2023 … would include every communication Plaintiff sent or received, from simple instructions to members of her family for grocery shopping to news articles shared among friends. The Court does not see how every bit of communication would be relevant to this matter."); *Henson v. Turn, Inc.*, Case No. 15-cv-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (request for all cell phone records "threatens to sweep in documents, and information that are not [remotely] relevant to the issues in the case, such as Plaintiff's private text messages, e-mails, contact lists, and photographs"); *Dufrene v. Am. Tugs, Inc.*, No. CV 18-554, 2018 WL 6448838, at *3 (E.D. La. Dec. 10, 2018) (denying motion to compel where the plaintiff's request for "all cell phone information and data" would "reveal a plethora of irrelevant and potentially highly personal information").

assault claims, and other messages discussing her mental or emotional struggles may have some bearing on her damage claims. Given the sensitive nature of the contents of cell phones, however, compelling Plaintiff to produce all cell phone records is not warranted. *Hardy*, 2019 WL 3290346, at *3 (citing cases). The Court is not "required to permit [the County] to engage in a 'fishing expedition' in the hope of supporting [its] claim." *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. 2002). Accordingly, the County's Motion is denied as it pertains to RFP 7.

**RFP 11**

RFP 11 seeks all electronic communications between Plaintiff and Jack Carrillo or any individual in the car at the time of the crash, concerning the accident, Plaintiff's alleged damages, or Plaintiff's interaction with Martinez. (Doc. 134-8 at 4). Plaintiff objected to producing "*all* electronic communications" between Plaintiff and Jack Carrillo or the people in the vehicle at the time of the crash as overbroad. (*Id.* at 5). But the request does not ask for "all electronic communications." It is limited to communications concerning the accident, Plaintiff's alleged damages, or Plaintiff's interaction with Defendant Martinez. After objecting, Plaintiff stated that she "has provided access to screenshots of texts between her, and Jack Carrillo related to compensatory and punitive damages." (*Id.*). Plaintiff's objections are overruled, and she is ordered to produce all electronic communications between her and either Jack Carrillo or any other individual in the vehicle at the time of the crash that concern or relate to the accident, Plaintiff's alleged damages, or Plaintiff's interactions with Martinez. Plaintiff shall produce additional electronic communications, if applicable, and certify in a supplemental response that all responsive electronic communications have been produced.

21

**RFP 12**

RFP 12 seeks all documents in Plaintiff's possession, including documents in the possession of Plaintiff's insurance carrier, concerning insurance claims related to the vehicle involved in the April 30, 2023 car accident. (Doc. 134-8 at 5). Plaintiff objected, arguing that "a claims file or a car accident is not relevant to a dispute about tort claim coverage for a criminal sexual assault." (*Id.*).

The relevance of this request is not obvious to the Court from the request itself. Therefore, the County bears the burden of demonstrating relevance. The County argues as follows:

> The Plaintiff claims she has been severely damaged as a result of her contact with Defendant Martinez. However, upon information and belief, the Plaintiff was able to handle her insurance claim related to her vehicle immediately following her contact with Defendant Martinez. The Defendant is entitled to ascertain all of the Plaintiff's activities and communications the Plaintiff engaged in during the days following the Plaintiff's contact with Defendant Martinez.

(Doc. 134 at 18).

The Court disagrees that documentation concerning an insurance claim related to the accidence is relevant to Plaintiff's damages from Martinez's sexual assault. The County can ask Plaintiff questions about her activities following the assault, including whether she was able to submit an insurance claim for the accident. But the County has not convinced the Court that a request for documents related to an insurance claim for the accident is anything other than a fishing expedition.

## IV.   Requests for Admission ("RFA")

Rule 36 provides that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)

relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). Rule 36(a)(4) addresses answering a request for admission. It provides,

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

FED. R. CIV. P. 36(a)(4).

"Requests for admission differ from other discovery devices in that they are not necessarily used to obtain information but rather to expedite trial and relieve parties of the burden and expense of proving facts which are undisputed. A RFA is not strictly speaking a discovery tool at all, but is simply a device for determining which facts are still in dispute and which facts can be eliminated from the case so as to narrow the issues that must be tried." *Gonzales v. Goodyear Tire & Rubber Co.,* No. CIV 05-941 BB/LFG, 2006 WL 8443839, at *2 (D.N.M. Aug. 18, 2006). Furthermore, "[a]n answer to a request for admission is not subject to a motion to strike nor a motion to compel. … The court, however, may determine the sufficiency of the answers submitted. If the court determines the answers do not comply with the rule, it may order the matter admitted, or order the party to serve amended answers." *Cont'l Cas. Co. v. Brummel*, 112 F.R.D. 77, 81 (D. Colo. 1986) (internal citations omitted).

**RFAs 2, 3, 4, and 8**

The County argues that Plaintiff's responses to RFAs 2, 3, 4, and 8 are deficient because the responses "contain[ ] an explanation, which is not permitted under Rule 36." (Doc. 134 at 18). The statement that "explanations are not permitted" is not entirely accurate, however. A response

23

may include an objection and state "the reasons therefore"; it may give an explanation for "why the answering party cannot truthfully admit or deny the matter"; or, "when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested," he can do so by "specify[ing] so much of it as is true and qualify[ing] or deny[ing] the remainder." *Cont'l Cas. Co.*, 112 F.R.D. at 81. "If the responding party finds the wording of a request for admission imprecise, he should set forth a qualified answer that fairly meets the substance of the request." *House v. Giant of Maryland LLC,* 232 F.R.D. 257, 262 (E.D. Va. 2005).

The County relies on *Harris v. Oil Reclaiming Co.*, 190 F.R.D. 674, 677 (D. Kan. 1999), for the proposition that explanations are never allowed. *See* (Doc. 134 at 22). But in *Harris*, the defendant objected to the requests for admission without providing any response. In resisting answering at all, the defendant argued that "it would mislead the jury to present the admissions to the jury without any explanation," to which the court stated, "[t]hat may … be valid, but [the defendant] will have opportunity at trial or in summary judgment to present evidence [on the subject matter of the requests for admission]. He may not make legal arguments about the matter "in an answer to a request for admissions unless his answer 'specifically den[ies] the matter or set[s] forth in detail the reasons why [he] cannot truthfully admit or deny the matter.'" 190 F.R.D. at 676 (citing Rule 36). Unlike the defendant in *Harris,* Plaintiff provided a response to the RFAs in question. She admitted RFAs 2 and 8, and denied RFAs 3 and 4. The point of contention is that, following each admission and denial, Plaintiff made an objection. And for RFAs 2 and 3, which ask about whether Plaintiff reported Martinez's sexual assault, Plaintiff qualified her response with the designation "With Explanation" next to her answer.

24

*RFA 2.*

RFA 2 asks Plaintiff to admit that she did not report Martinez's conduct to the Sheriff's Office prior to August 30, 2023. Plaintiff admitted RFA 2 "[w]ith [e]xplanation." In the paragraph that follows, Plaintiff objected to RFA 2 on the ground that the County should not be allowed to inquire into the subject matter of the RFA. She then referred to her theory of "institutional betrayal trauma." Plaintiff is permitted "to object on the grounds that the requested matter is beyond the scope of discovery permitted by Rule 26(b)(1)." *Hatchett v. United Parcel Serv., Inc.*, No. 13-CV-1183 MCA/SMV, 2014 WL 12786897, at *2 (D.N.M. Oct. 1, 2014). She may also respond to the RFA, as she did here, so long as her response is not conditional such that it is made "subject to" or "without waiving" the objection. *See Reed Auto of Overland Park, LLC,* 2020 WL 5118103, at *2. Plaintiff is ordered to amend her response to clarify that her admission to RFA 2 is not conditioned by her objections but is instead *notwithstanding* the objections. Plaintiff also must amend her response to remove the "With Explanation" designation next to her admission. The paragraph that follows appears to set forth only an objection, not an explanation.[15] Beyond that ambiguity, RFA 2 is straightforward and clear enough that it can be answered with a simple admit or deny without an explanation. *See Hatchett*, 2014 WL 12786897, at *2 (responses to RFAs "must be 'forthright, specific and unconditional' unless a qualified response is *necessary*; for example, when the statement, if taken out of context, conveys unwarranted implications" (emphasis added)). Any explanation Plaintiff might want to give for why she did not report Martinez's conduct to the Sheriff's Office is not necessary to clarify or explain her response, but instead constitutes argument

---

[15] If Plaintiff intended for her "institutional trauma" objection to also be an "explanation" for why she did not report Martinez's abuse, then that is not clearly stated.

concerning the meaning or implications of the fact admitted. She will have the opportunity to present those arguments at the appropriate time when and if the fact is used against her on summary judgment or at trial. *See Harris, supra.*

RFA 3

RFA 3 asks Plaintiff to admit that she did not report Martinez's conduct to any employee or agent of Doña Ana County prior to August 30, 2023. As with RFA 2, Plaintiff is ordered to amend her response to clarify that it is not conditioned on her objection, and that she provided a response to the request notwithstanding her objection. Unlike RFA 2, however, the Court will not require Plaintiff to amend her denial of RFA 3 to remove the "[w]ith explanation" qualification. Explanations are permitted in some circumstances. *See Ash Grove Cement v. Emps. Ins. of Wausau*, No. 05-2339-JWL, 2007 WL 2333350, at *3 (D. Kan. Aug. 16, 2007) (Plaintiff should be able to answer the request by admission or denial, or both with its own explanation"). In this instance, Plaintiff's denial may be qualified with an explanation because the denial could convey an unwarranted implication without the explanation. Plaintiff explained her denial as follows:

> Following the sexual assault, while at jail, the plaintiff inquired as to how to report the conduct of Deputy Michael Martinez to a guard. While she does not recall exactly what she said to the guard, she did attempt to discovery [sic] how to report the assault while in jail.

(Doc. 134-9 at 2). Plaintiff's explanation "provide[s] clarity and lucidity and [does] not … obfuscate or frustrate." *Hatchett*, 2014 WL 12786897, at *2. The Court finds the qualification contained in Plaintiff's denial to RFA 3 "is appropriate to fairly meet the substance of the request." *Harris*, 190 F.R.D. at 677.

*RFA 8*

RFA 8 asks Plaintiff to admit that she said the word "sleepover" twice to Martinez while she was restrained in the backseat of the patrol car. (Doc. 134-9 at 4). As with RFAs 2 and 3, Plaintiff is ordered to amend her response to clarify that her response is not conditioned on her stated objections, and that she provided a response to the request notwithstanding her objections. While Plaintiff's admission is followed by an objection,[16] unlike RFAs 2 and 3, she does not state that her response is made "[w]ith [e]xplanation." Therefore, once supplemented as stated above, the Court finds her response is sufficient. *See Payless Shoesource Worldwide, Inc. v. Target Corp.,* No. CIV.A.05-4023-JAR, 2006 WL 2224779, at *2 (D. Kan. Aug. 2, 2006) ("The court cannot strike a response to a request for admission, but it can determine the sufficiency of the response.").

**RFAs 5, 6, and 7**

RFAs 5, 6, and 7 ask Plaintiff to admit certain matters about the accident after Plaintiff was placed under arrest by Defendant Martinez, including that Plaintiff lied about the cause of the accident, that Plaintiff was driving the vehicle involved in the accident, and that Plaintiff told law enforcement officers that someone other than herself was driving the vehicle involved in the accident.[17] Plaintiff objected to these RFAs as irrelevant to liability or damages issues in the case, arguing that the only purpose of the questions is to harass her. Plaintiff's objections are overruled. The information sought by these RFAs arguably goes to Plaintiff's credibility. It may be Plaintiff

---

[16] "Plaintiff herein objects to the County's line of Requests for Admission that imply because she 'fawned' and 'froze' during the sexual assault, as opposed to 'flight' or 'fight' that she in any way consented to, invited or can be blamed for the sexual assault or harms caused by the sexual assault to which Defendant Martinez has pled guilty." (Doc. 134-9 at 4).

[17] RFAs 6 and 7 refer to an accident occurring on August 30, 2023, but the complaint alleges that the accident at issue here took place on April 30, 2023.

27

will prevail with an argument that the prejudicial effect of the information sought by these RFAs outweighs whatever probative value the information has on the issue of Plaintiff's credibility. But that is not a basis for denying the discovery. And simply asking Plaintiff to admit or deny the specific facts contained in RFAs 5, 6, and 7 is not harassing or offensive. Plaintiff may assert her objections, but is ordered to serve a supplemental response that states, notwithstanding her objections, she either admits or denies RFAs 5, 6 and 7.

### Conclusion

**ACCORDINGLY,** it is **ORDERED** that Doña Ana County's Motion To Compel, **Doc. 134**, is **GRANTED IN PART AND DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that neither party is awarded their costs or attorney fees in connection with the County's Motion to Compel, Doc. 134.

**FURTHER**, considering the nature, frequency, and types of discovery disputes that have been raised and addressed in the present case, it is **ORDERED** that, before filing any more discovery motions, the parties must meet and confer by telephone or in person, and if they are unable to resolve the dispute, the requesting party shall promptly email the Court, copying opposing counsel, to arrange an informal discovery conference. The email need only state that a meet-and-confer took place (stating whether it was in person or by telephone, and identifying the date, time, and names of participants), and that the parties were unable to resolve their dispute. All counsel who participated in the meet-and-confer must participate in the informal discovery conference. Prior to the informal discovery conference, the parties will be required to provide the Court with any written discovery requests and responses at issue, and a brief written statement, no more than five (5) pages in length, concerning the dispute, without unnecessary background or

28

citation to general, boilerplate legal principles. It is the Court's hope that this procedure will result in less acrimony, more expedited rulings, better identification of issues, and a reduction in expenses associated with discovery in this case.

IT IS SO ORDERED this 17th day of March 2026.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE